[No. A040027. First Dist., Div. One. May 24, 1990.]

BANK OF THE ORIENT et al., Plaintiffs and Respondents, v. TOWN OF TIBURON, Defendant and Appellant.

994

COUNSEL

Gary T. Ragghianti, Town Attorney, Lisa A. Goldfien, Shute, Mihaly & Weinberger, E. Clement Shute, Jr., Rachel B. Hooper, Winifred A. Berman and Kenneth L. Kimmell for Defendant and Appellant.

Ellman, Burke & Cassidy, Ellman, Burke, Hoffman & Johnson, John D. Hoffman, Eisenberg & Pollack, Neil D. Eisenberg and Stephen R. Leopold for Plaintiffs and Respondents.

Ronald A. Zumbrun, Edward J. Connor, Jr., and Timothy A. Bittle as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**RACANELLI, P. J.**—This appeal concerns the validity of Measure C, an initiative adopted by the voters of the Town of Tiburon imposing a temporary moratorium on construction. The trial court concluded the measure was invalid and enjoined its enforcement. ■ ■ ■ ■ The town appeals.[1] We affirm for the reasons explained.

### PROCEDURAL AND FACTUAL BACKGROUND

On October 16, 1985, under the authority of Government Code[2] section 65858, the Tiburon Town Council enacted Ordinance No. 307 N.S., a 45-day interim urgency ordinance imposing a moratorium on the processing and approval of development permits. On November 26, 1985, the ordinance was extended until January 25, 1986, and in January, the ordinance was again extended until January 8, 1987.

Under section 65858, a legislative body may adopt interim urgency ordinances prohibiting uses that may conflict with a contemplated general plan amendment or rezoning proposal which the legislative body is studying or intends to study within a reasonable period of time. The town council's

---

[1] Although the ordinance, by its own terms, would have expired by now, we are convinced the questions raised are not moot. In light of *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378], the validity of Measure C may be directly relevant to the issues of takings and damages still pending before the trial court. (See *Sauer* v. *McCarthy* (1960) 54 Cal.2d 295 [5 Cal.Rptr. 682, 353 P.2d 290].) In addition, this is a recurring issue of public importance. (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 388, fn. 1 [211 Cal.Rptr. 758, 696 P.2d 150].)

[2] Unless otherwise indicated, all further statutory references are to the Government Code.

findings in support of the moratorium ordinance state that the town intends "forthwith" to commence a complete review of its general plan and its zoning ordinance, and to evaluate traffic impacts expected to result from present and projected land use developments. The council found that the issuance of land use permits and entitlements during the pendency of these evaluations could lead to development which "would create further irreversible adverse traffic impacts and which may well be inconsistent with density and intensity of use amendments contained in the contemplated General Plan and zoning studies."

On April 8, 1986, Tiburon voters approved initiative Measure C, a development moratorium broader in scope than the moratorium enacted by the town council.[3] This ordinance became effective on April 26, 1986, and was to remain in effect until April 26, 1988 (some 15 months longer than the previously enacted moratorium). It required the town council to undertake a traffic study and provided that the council could extend the moratorium if necessary to complete the study.

In July and August 1986, respondents Bank of the Orient and Taldan Investment Company, Inc. (property developers),[4] filed lawsuits in Marin County Superior Court challenging the validity of Measure C. Numerous causes of action were asserted based on the town's enactment and application of Measure C, including the claim that the initiative violated section 65858. The town thereafter filed demurrers and motions to strike. These two actions were then coordinated with four other cases raising the same basic issues;[5] a specially appointed judge pro tempore heard the matters, pursuant to stipulation of the parties.

The trial court tentatively decided that Measure C violated the statutory requirements that interim ordinances not exceed two years and not be extended more than twice.[6] The court further determined that respondents

---

[3] The notice of intent to circulate a petition was filed in September 1985 and stated that an assessment of the actual traffic impacts of existing and additional development was necessary to establish controls for gradual growth because the town council had recently approved large development projects and the town's circulation system and the Highway 101 interchange may be inadequate to bear the resulting increase in traffic.

[4] Bank of the Orient owned 32 subdivided lots which had received master plan and other approvals. Taldan owned approximately 22.6 acres recently annexed by the town and also had master plan and other development permits.

[5] Four other developers also brought lawsuits challenging Measure C: Perini Land & Development Company; La Cresta Associates and La Cresta Investments, N.F.; Donald W. and Bonnie G. Agins; R C Holdings, Inc., et al. These actions were coordinated in the trial court and then ultimately consolidated on appeal. However, since the time the town filed its appeal, these four cases have been settled, with the appeals in each of the settled cases held in abeyance pending the eventual dismissal of the underlying actions. (See order filed Feb. 2, 1989.)

[6] The trial court reasoned that although the zoning power derives from the Constitution, the Legislature may prescribe the manner of exercise and impose certain limits and that the

were entitled to a judicial declaration of Measure C's invalidity and an injunction against its continued enforcement because there was no factual dispute with respect to the section 65858 claim.[7]

■ ■ ■ ■ After a further hearing on the town's objections to the proposed statement of decision and motion of reconsideration, the trial court entered final judgments: (1) declaring Measure C invalid; (2) enjoining the town from enforcing the terms of Measure C; (3) ordering a peremptory writ of mandate be issued to command the town to process and consider development applications submitted by respondents without enforcing Measure C; and (4) severing the section 65858 claim from the remaining causes of action in the case in order that a final judgment could be entered.[8] The town timely appeals.

## DISCUSSION

■ In *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7-8 [143 Cal.Rptr. 430], we set out the principles guiding our review of a statute: "It is elementary that the construction of a statute (or ordinance) and its applicability is solely a question of law. (6 Witkin, Cal. Procedure (2d ed.) §§ 209-210, pp. 4200-4201, and cases there cited.) In undertaking such interpretation, we rely upon familiar principles of statutory construction in order to 'ascertain the intent of the . . . [lawmakers] so as to effectuate the purpose of the law.' (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) 'In determining such intent "[t]he court turns first to the words themselves for the answer." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1], cert. den., 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].) We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500]; see also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 203 [339 P.2d 801], disapproved on another ground in *Petri Cleaners, Inc.* v. *Automotive Employees, etc. Local No. 88,* 53 Cal.2d 455, 473-475 [2

power of the voters is no greater or less than that of the town council. The court also concluded that "Section 65858 must be regarded as a legislative declaration of state-wide policy that interim prohibitory ordinances are somewhat drastic in nature." Therefore, section 65858 applies to initiatives unless its procedural requirements impose undue burdens; that while the procedures can't be inferred, the substantive limitations on duration and extensions can.

[7] None of the other legal issues raised by the town's demurrers and motions to strike were reached in this intended decision.

[8] This procedure bifurcating the actions is appropriate in these unusual circumstances. (See *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 [123 Cal.Rptr. 669]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 66, pp. 90-91.)

Cal.Rptr. 470, 349 P.2d 76].) "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." (*Select Base Materials* v. *Board of Equal., supra*, 51 Cal.2d 640, 645); . . . "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9]; see also *West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 79 3, 469 P.2d 665].) Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; see also 45 Cal.Jur.2d, pp. 625-626 and cases there cited.)" (Accord *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698-699 [170 Cal.Rptr. 817, 621 P.2d 856].) Here, we consider whether the trial court correctly determined that Measure C violated the requirements of section 65858; in other words, whether section 65858 applies to zoning moratorium ordinances adopted by initiative. We will conclude the trial court's determination must be upheld.

## I.

The town first contends that the Legislature did not intend that section 65858 was to apply to initiative measures. It argues that the plain language of the statute indicates that it applies only to measures enacted by the legislative body, not the voters, and that the statutory requirements make no sense in the context of an initiative.

Section 65858, as operative at the time of trial, provided: "(a) Without following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body, to protect the public safety, health and welfare, may adopt as an urgency measure an interim ordinance prohibiting any uses which may be in conflict with a contemplated general plan, specific plan, or zoning proposal which the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time. That urgency measure shall require a four-fifths vote of the legislative body for adoption. The interim ordinance shall be of no further force and effect 45 days from its date of adoption. After notice pursuant to Section 65090 and public hearing, the legislative body may extend the interim ordinance for 10 months and 15 days and subsequently extend the interim ordinance for one year. Any such extension shall also require a four-fifths vote for adoption. Not more than two such extensions may be adopted.

"(b) Alternatively, an interim ordinance may be adopted by a four-fifths vote following notice pursuant to Section 65090 and public hearing, in which case it shall be of no further force and effect 45 days from its date of adoption. After notice pursuant to Section 65090 and public hearing, the legislative body may by a four-fifths vote extend the interim ordinance for 22 months and 15 days.

"(c) The legislative body shall not adopt or extend any interim ordinance pursuant to this section unless the ordinance contains a finding that there is a current and immediate threat to the public health, safety, or welfare, and that the approval of additional subdivisions, use permits, variances, building permits, or any other applicable entitlement for use which is required in order to comply with a zoning ordinance would result in a threat to public health, safety, or welfare.

"(d) Ten days prior to the expiration of an interim ordinance or any extension, the legislative body shall issue a written report describing the measures taken to alleviate the condition which led to the adoption of the ordinance.

"(e) When any such interim ordinance has been adopted, every subsequent ordinance adopted pursuant to this section, covering the whole or a part of the same property, shall automatically terminate and be of no further force or effect upon the termination of the first such ordinance or any extension of the ordinance as provided in this section."

As is apparent, the statute refers generically to the "legislative body." ██ As the town cogently observes, if the words of a statute are clear, courts do not add to or alter them to accomplish a purpose not on the face of the statute or apparent from the legislative history. (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at p. 698; *City of Chico* v. *Superior Court* (1979) 89 Cal.App.3d 187, 191-192 [152 Cal.Rptr. 380].) Nor is there any need for judicial construction if the statute's meaning is plain and its language clear and unambiguous. (*Smith* v. *Rhea* (1977) 72 Cal.App.3d 361, 365 [140 Cal.Rptr. 116].) The town points to section 34000, the introduction to title 4 pertaining to "Government of Cities," wherein "legislative body" is defined to mean board of trustees, city council, or other governing body of a city.[9]

██ However, respondents insist that the guiding principle of statutory construction is to ascertain the intent of the Legislature so as to effectuate

---

[9] The town also cites section 4013 of the Elections Code distinguishing operations of voters as opposed to legislative bodies; but as respondents note, that section deals specifically with enactment by initiative.

the purpose of the law. (*California Teachers Assn.* v. *San Diego Community College Dist., supra*, 28 Cal.3d at p. 698.) If this intent can be determined from the plain language of the statute, the inquiry need go no further. However, "[l]egislative intent must be gleaned from the whole act rather than from isolated words. [Citation.]" (*Building Industry Assn.* v. *City of Camarillo* (1986) 41 Cal.3d 810, 819 [226 Cal.Rptr. 81, 718 P.2d 68].) ■■■ And here, as respondents argue, the statute as a whole indicates a legislative intention that all zoning moratoria enactments are subject to its provisions.

First, respondents point out that the language of the statute itself ("[w]ithout following the procedures otherwise required . . . , the legislative body . . . may adopt as an urgency measure an interim ordinance . . . .") clearly indicates that the main topic is interim ordinances, not urgency measures, as the town contends. Further, it is argued, subdivision (b)—which begins: "Alternatively, an interim ordinance may be adopted . . ."—authorizes a single extension for the same total period of duration after a noticed public hearing and a four-fifths vote. Subdivisions (a) and (b), read in relevant context, imply that only two alternatives are available for enacting and extending a 45-day interim moratorium ordinance.

Respondents advance the recent decision of *Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491 [247 Cal.Rptr. 362, 754 P.2d 708], where the Supreme Court explained that statutory references to action by the local legislative body "are generally not conclusive as to legislative intent" so as to preclude action on the same subject by the electorate, even though they may support such an inference. (*Id.*, at p. 501.) Moreover, "a reference using generic language such as 'governing body' or 'legislative body' support[s] a weaker inference than a specific reference to boards of supervisors and city councils." (*Ibid.*) Consequently, respondents maintain, an examination of the legislative history of section 65858 is necessary to determine the Legislature's intent. We are inclined to agree.

Respondents submit that section 65858 "is the end product of a lengthy and consistent legislative effort to impose specific time limits and other restrictions on the use of local moratorium ordinances, and to progressively tighten those restrictions." In 1953, the Legislature enacted a new comprehensive local zoning act of which former section 65806, the precursor to section 65858, was a part. (Stats. 1953, ch. 1355, § 3, p. 2927.) Section 65806 provided for the adoption of a "temporary interim zoning ordinance" prohibiting uses in conflict with a zoning ordinance which the local planning body had studied, intended to study or had recommended for adoption. It placed no specific time limits on the interim ordinance, but did

require that the planning body proceed "in good faith" and that any intended studies be conducted "within a reasonable time."

In 1961, the Legislature amended section 65806 to insert time limits: the ordinance could be initially adopted for a one-year period by a two-thirds vote of the legislative body, and it could be extended for a maximum total period of three years.[10] (Stats. 1961, ch. 1871, § 1, p. 3973.) This amendment was in apparent reaction to the decision in *Mang* v. *County of Santa Barbara* (1960) 182 Cal.App.2d 93 [5 Cal.Rptr. 724], in which the court held that although there was nothing in the section requiring that a precise time limit be fixed, the ordinance was obviously intended to be limited in duration and thus did not violate a property owner's rights.

In 1965, section 65858 was enacted to replace former section 65806; it reduced the initial period for which a moratorium ordinance could be adopted without notice or hearing to 90 days and also reduced the overall time limit to 2 years and 90 days. (Stats. 1965, ch. 1880, § 6, pp. 4348-4349.) In 1971, the overall time limit was reduced to two years. (Stats. 1971, ch. 187, § 1, p. 256.)

■■■■ Finally, in 1982, the Legislature amended section 65858 to further reduce the interim time limits and to add new restrictions by requiring a specific finding of a "current and immediate threat" to the public health, safety or welfare prior to the adoption or extension of the ordinance, and a written report 10 days prior to expiration of the ordinance to describe the measures taken to alleviate the conditions that led to its adoption. (Stats. 1982, ch. 1108, § 1, p. 4021.)[11]

---

[10] On reconsideration of our earlier denial of a request to take judicial notice, we take such notice of two reports to the Governor's office concerning the bill. One is a letter dated July 6, 1961, from the State Office of Planning stating that the measure "amends the provisions of the planning act relating to the adoption of interim zoning ordinances." A second communication from the Department of Finance contains similar language.

[11] The Enrolled Bill Report from the Office of Planning and Research on September 7, 1982, declares the bill "[w]ould prohibit a legislative body from adopting an ordinance imposing a moratorium on the issuance of building permits, except in specified cases." It also explains that the bill (Sen. Bill No. 580) was introduced at the request of the builders and developers in the Santa Clara Valley in reaction to the length of time it has taken local planning officials to deliberate over the housing crisis in the area. Of similar effect is the Enrolled Bill Report from the Department of Housing and Community Development. However, a letter from the author of the bill, Senator O'Keefe, suggests a contrary view: "Local governments may enact moratoriums on the issuance of various construction permits through adoption of a standard ordinance, or by means of an interim ordinance." The letter contains a discussion concerning application of Senate Bill No. 580 to interim ordinances.

Judicial notice may properly be taken of enrolled bill reports for the purpose of determining legislative intent. (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218-219 [185 Cal.Rptr. 270, 649 P.2d 912].) The views of a single legislator, though judicially noticeable, may not be indicative of the views of the Legislature as a whole. (*Cali-*

■ We think the relevant history manifests a legislative intent, albeit indirectly, to limit *all* moratorium ordinances.

The town also cites the case of *Building Industry Assn.* v. *City of Camarillo, supra,* 41 Cal.3d 810, in which the Supreme Court considered whether Evidence Code section 669.5 (shifting the burden of proof to proponents of growth control legislation) was applicable to ordinances enacted through the initiative process. The first subdivision of the section states that it applies to ordinances "enacted by the governing body of a city, county, or city and county" while a later subdivision expressly exempts certain initiative measures adopted prior to the effective date of the statute. The court concluded that the statute was ambiguous and required judicial construction, but that the ambiguity was created by the reference to initiatives in the later subdivision and not by the use of the term, "governing body." (*Id.,* at pp. 819-820.) Because section 65858 contains no comparable ambiguous provisions, *City of Camarillo* is factually distinguishable.

■ But the section does contain several requirements which do not easily lend themselves to application in the initiative context. The trial court noted some of them. For example, it noted that the prescribed method to periodically extend the moratorium (10-month and 15 day-extension of 45-day moratorium adopted as an urgency measure upon notice and public hearing; then an additional one-year extension upon similar noticed hearing) is neither practical nor feasible for a voter-enacted moratorium. The basic requirement of notice and public hearing is itself an unworkable concept for an initiative proposal (see *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 594 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]). And the Elections Code already provides for a notice of intent to circulate a petition as the only prerequisite. Similarly, the statutory mandate that the legislative body make "findings" to justify its adoption or extension of an interim ordinance is singularly inappropriate in the context of the initiative process. (See *Building Industry Assn.* v. *City of Camarillo, supra,* 41 Cal.3d at p. 824.) Nor, finally, is the required condition that the "legislative body" issue a written report (describing measures taken to alleviate the condition which led to adoption of ordinance) one which can be equally applied to and discharged by an amorphous electoral body.

However, since the advent of *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, courts have found little difficulty in excising such burdensome provisions. In that case, the Supreme Court, overruling its earlier decision in *Hurst* v. *City of Burlingame* (1929) 207 Cal.

*fornia Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at pp. 699-701.)

134 [277 P. 308], concluded that "the statutory notice and hearing provisions [of the zoning laws] govern only ordinances enacted by city council action and do not limit the power of municipal electors, reserved to them by the state Constitution, to enact legislation by initiative." (18 Cal.3d at p. 588.) Thus, while a statute providing certain substantive limits may be within the Legislature's power, it may not burden the electorate with unworkable procedures. Here, the trial court properly acknowledged this principle and correctly applied it to section 65858.

## II.

The town next argues that because the legislative body may enact a moratorium ordinance by normal zoning procedures, the voters have the power to enact a moratorium independent of section 65858 requirements. The town submits that it "takes no issue" with the underlying principle of coextensive powers, as emphasized by the trial court in its decision, but maintains that the voters may enact a moratorium ordinance that is not an urgency measure because the town council itself retains that power. Its position is not well supported.

"The state Constitution confers upon all cities and counties the power to 'make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*.' (Italics added.) (Cal. Const., art. XI, § 7. See *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 868 [201 Cal.Rptr. 593, 679 P.2d 27].)" (*Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 261 [217 Cal.Rptr. 1, 703 P.2d 339].) ■ "County zoning regulations are a manifestation of the local police power conferred by . . . the state Constitution, not an exercise of authority delegated by statute. [Citations.]" (*Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 417 [79 Cal.Rptr. 872].) Moreover, "[s]ection 65800 now makes it clear that the provisions of the State Zoning Law pertaining to the adoption of local zoning regulations were not intended as specific grants of authority but as minimum standards to be observed in local zoning practices, reserving in cities and counties 'the maximum degree of control over local zoning matters,' including the power to enact supplementary substantive as well as procedural regulations not inconsistent with state law. [Citations.]" (*Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 63 [107 Cal.Rptr. 214], disapproved on another point in *Associated Home Builders etc., Inc.* v. *City of Livermore, supra*, 18 Cal.3d at p. 596, fn. 14.) ■ According to the town, it may enact zoning moratorium ordinances by merely following regular zoning procedures, i.e., planning commission notice and hearing, recommendation to council, public hearing, council action subject to referendum. (See §§ 65850, 65853-65857.) But this view finds no support in the relevant legislative history.

The town bases its argument that section 65858 does not preempt the field of moratorium ordinances on the language of the section itself: (1) the first clause ("Without following the procedures otherwise required prior to the adoption of a zoning ordinance . . .") suggests that other procedures are possible; (2) no explicit reference to initiatives is made, as in Evidence Code section 669.5, discussed in *Camarillo*; (3) subdivision (c) requirement of findings to "adopt or extend any interim ordinance *pursuant to this section*" (italics added); and (4) the lack of a statement of policy or purpose, if the Legislature intended to preempt the field, because such zoning regulations do not apply to charter cities (see § 65803).

In rejecting this view, the trial court reasoned that if section 65858 only applied to urgency moratorium ordinances, it would simply duplicate the general urgency ordinance statute. (§ 36937.) The town disagrees, however, asserting that although under section 36937 an urgency ordinance adopted for the immediate preservation of the public peace, health or safety takes effect immediately, that section—unlike section 65858—provides no mechanism to bypass the regular time-consuming local planning process.[12]

We agree with respondents that, under the town's interpretation, the doctrine of coextensive powers would be seriously undermined and a conflict with the general laws would be created. While the town recognizes that under the doctrine of coextensive powers the voters' power to enact by initiative is circumscribed by the same restrictions imposed on the town council's actions (see *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 674 [194 Cal.Rptr. 781, 669 P.2d 17] [voters have no greater power than Legislature in terms of frequency of redistricting]), it nonetheless contends that since the town council could enact a zoning moratorium under the regular zoning procedure, the voters could do likewise. That contention must fail in light of our previous determination that the Legislature intended to occupy the entire field of interim zoning moratoria.[13]

### III.

The town further contends that even if section 65858 limits the duration of a moratorium, its prohibition on a third extension should not be applied

---

[12] The town reads a footnote in the recent case of *City of Stanton* v. *Cox* to mean that section 65858 must be used for urgency zoning ordinances only. (*City of Stanton* v. *Cox* (1989) 207 Cal.App.3d 1557, 1561 at fn. 2 [255 Cal.Rptr. 682].) But as respondents point out, that issue was not decided in the case; and the footnote only makes reference to section 65858 authorizing urgency zoning ordinances as imposing a freeze for a limited period of time.

[13] In *Building Industry Assn.* v. *Superior Court* (1989) 211 Cal.App.3d 277 [259 Cal.Rptr. 325], the Fourth District determined, contrary to petitioner's claim, that the Legislature did not intend by preemption to prevent local enactment of numerical growth control ordinances by initiative, regardless of state statutes concerning the importance of available housing. (See § 65580, among others.) This, however, still left open the question whether the Legislature intended to occupy the much narrower field of zoning moratorium ordinances.

to an initiative ordinance. The trial court found that when Measure C was adopted on April 8, 1986, the council had, on January 9, 1986, already passed its second and final extension of the original interim ordinance, which expired on January 8, 1987. Had Measure C been adopted before the council action on January 9, 1986, arguably it could have extended the original moratorium for the full two-year period, or until October 15, 1987. However, at the time Measure C was adopted, the town no longer had any legislative power, whether vested in the electorate or the council, to extend the moratorium beyond the date fixed by the second extension.[14] The town suggests that the trial court's reasoning is internally inconsistent in barring a third extension while also concluding that the extension process is not applicable to voter-enacted moratoria as being infeasible.

Stated differently, the town claims that Measure C should have been allowed to remain viable and to impose a moratorium until October 15, 1987, the outer time limit on the town's power. Under the town's argument, that would have left a moratorium in place approximately nine months longer.

We conclude, however, that the trial court correctly interpreted the third extension prohibition as a substantive limit, under the authority of *Legislature* v. *Deukmejian, supra*, 34 Cal.3d 658 and *Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330 [178 Cal.Rptr. 723] (voter initiative changing zoning after city approval of final development plan and a tentative tract map struck down because identical council action would have been invalid as arbitrary and discriminatory). Such result is compelled by application of the doctrine of coextensive powers.

The town also theorizes that a "hostile" city council could always obstruct the citizens' ability to enact a moratorium by a first-strike legislative restriction on the city's reservoir of power. We need not consider such a speculative scenario. And, in any case, the converse situation is equally plausible: the voters could literally seize the initiative by first enacting a two-year moratorium thus prohibiting the council from further action.

## IV.

Finally, the town argues that even if section 65858 applies to initiatives, Measure C does not constitute an illegal extension of the moratorium

---

[14] As noted, section 65858 provides that not more than two extensions may be adopted and that every subsequent ordinance adopted thereunder shall automatically terminate and be of no further force or effect upon the termination of the first such ordinance or any extension of the ordinance as provided in this section. (Subds. (a), (e).) This language clearly limits any moratorium to the two-year total period allowed in either subdivision (a) or (b).

ordinances, at least as to some of respondents' properties. Thus, the argument continues, a factual issue exists whether the earlier moratoria actually applied to respondent bank's property.[15] If not, it reasons, then Measure C might still be valid as to that property.

The town points out that the initial ordinance and its first extension did not cover new single-family homes on legal lots in existence as of October 16, 1985, and the second extension did not cover new single-family homes on lots within existing subdivisions where substantial construction had commenced prior to adoption of the ordinance. By contrast, it ultimately concludes, Measure C applied to all those properties.

However, subdivision (e) of section 65858 declares that "[w]hen any such interim ordinance has been adopted, every subsequent ordinance adopted pursuant to this section, *covering the whole or a part of the same property,* shall automatically terminate . . . ." (Italics added.) A commonsense reading of the provision unmistakably indicates that if the later ordinance covers *even some of the same property* (as Measure C did), it must terminate as the section provides: upon completion of the second extension. Moreover, as respondent bank correctly asserts, all of the ordinances were to be applied citywide; a parcel-by-parcel determination of which ordinance applied on any given date would be unreasonable. It concludes that its property was covered by the ordinance in effect when Measure C was adopted and, accordingly, was subject to termination under subdivision (e) under any reasonable construction.

For each and all of the reasons discussed, the judgment must be affirmed.

Judgment affirmed.

Stein, J., concurred.

**NEWSOM, J.**—I respectfully dissent. There is in my view no reason for us to depart from the clear language of Government Code section 65858, limiting its application to enactments of a "legislative body," defined elsewhere in the Government Code, as the majority observes, to mean "board of trustees, city council, or other governing body of a city." (Gov. Code, § 34000.) "A fundamental rule of statutory construction is that '[l]egislative intent should be determined from the language of the statute.' [Citations.]" (*Ron Yates Construction Co.* v. *Superior Court* (1986) 186 Cal.App.3d 337, 345 [230 Cal.Rptr. 629].) The Legislature must also be presumed to be aware of existing statutes when enacting new legislation. (*People* v. *Over-*

---

[15] The town appears to admit by silence that respondent Taldan's property was covered.

*street* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288]; *Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 847 [236 Cal.Rptr. 696].)

In interpreting Government Code section 65858, we are further obliged to consider and harmonize all parts of the statute. (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723]; *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 770 [167 Cal.Rptr. 440].) Pursuant to subdivisions (a) and (b) of Government Code section 65858, an interim ordinance adopted as an urgency measure requires a "four-fifths vote" for adoption. Initiatives do not harmoniously lend themselves to a four-fifths vote. Subdivision (d) directs the legislative body to issue a written report describing the measures taken to alleviate the condition which led to the adoption of the ordinance, a requirement ill-suited to initiative measures, but easily applied to city councils or other municipal governing bodies. And why would the Legislature provide, as it has done in subdivisions (a) and (b) of section 65858, for a public hearing as a prerequisite to extension of an interim ordinance enacted as an initiative by the voting public?

Finally, nothing in the legislative history of Government Code section 65858 persuades me that it was intended to cover initiative measures. Amendments to the statute limiting the duration of moratorium ordinances, and requiring as a predicate a "current and immediate threat" to public health, safety or welfare, constrict the length of time during which such measures may operate, and describe with particularity the circumstances under which they may be enacted, but evince no intent that I can discern to encompass the initiative process.

Since I view Government Code section 65858 as inapplicable to Measure C, on that basis I would reverse the ruling of the trial court.

Appellant's petition for review by the Supreme Court was denied August 8, 1990.