[No. G018098. Fourth Dist., Div. Three. Dec. 31, 1996.]

CHANDIS SECURITIES COMPANY et al., Plaintiffs and Appellants, v. CITY OF DANA POINT et al., Defendants and Respondents.

478

COUNSEL

Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., Jeffrey T. Thomas and Lee M. Gordon for Plaintiffs and Appellants.

Jerry M. Patterson, City Attorney, Burke, Williams & Sorensen, Harold A. Bridges, Thomas L. Altmayer and Kenneth D. Rozell for Defendants and Respondents.

OPINION

RYLAARSDAM, J.—Plaintiffs Chandis Securities Company, M. H. Sherman Company and Sherman Foundation sued defendants the City of Dana Point and its city council seeking to invalidate the results of two referendums by which the city's electorate failed to approve the adoption of a specific plan and a general plan amendment relating to plaintiffs' property, and to allow development of the land. The trial court granted defendants' motion for summary judgment and entered judgment for defendants. Plaintiffs contend the rejection of the referendums exceeded the city's police powers, violated their right to equal protection of the law and constituted a taking of property without just compensation. In addition, plaintiffs argue the referendums are invalid because they violate the consistency requirement of the Planning and Zoning Law (Gov. Code, § 65000 et seq.; all further statutory references are to the Government Code unless otherwise designated), and failed to satisfy the requirements of section 65589.5, subdivision (j). We find these arguments to be without merit and affirm.

FACTS

Plaintiffs own approximately 120 acres of undeveloped land along the coast in Dana Point known as the Headlands. Before Dana Point's incorporation, plaintiffs, the County of Orange and the California Coastal Commission had developed a specific plan for the Headlands designating 27 acres as visitor/recreation/commercial area, over 45 acres as recreation/open space/conservation area and permitting construction of 2 hotels and a maximum of 792 residences. The plan was never implemented.

Dana Point was incorporated as a general law city in 1989. It adopted a general plan which designated the Headlands as a specific plan area, listed land-use designations of recreation/open space, residential and visitor/recreation/commercial, set guidelines allowing between 261 and 522 residential

dwellings and 1 hotel, and designated over 61 acres of the property as open space. The subsequently enacted zoning code also required preparation of a specific plan for the Headlands before any development could occur.

Plaintiffs submitted a proposed specific plan for the Headlands in July 1992. After several public hearings and revisions, a plan was approved by the city council in April 1994. As approved, the plan provided for a maximum of 370 residential units, 1 hotel and 66.3 acres of recreation/open space/conservation area. In addition, the city council approved a general plan amendment to modify the recreation/open space/conservation element of the city's general plan, and certified the Headlands environmental impact report (EIR) as adequate and complete.

Petitions were timely filed placing referendums on the ballot to require voter approval of the general plan amendment (Measure C) and the Headlands' specific plan (Measure D). On November 8, 1994, both measures failed to receive the support of a majority of the city's voters, thus preventing enactment of the proposed specific plan and the general plan amendment.

DISCUSSION

1. *Constitutional Claims*

Plaintiffs contend the failure to approve Measures C and D violated their rights to due process and equal protection of the law, and constituted a taking under the Fifth Amendment of the federal Constitution. We disagree.

Dana Point's authority to regulate development of the Headlands is governed by the Planning and Zoning Law. In enacting this law, the Legislature found that ". . . California's land is an exhaustible resource . . . essential to the economy, environment and general well-being of the people of California . . ." (§ 65030), and ". . . decisions involving the future growth of the state . . . should be guided by an effective planning process, including the local general plan, and should proceed within the framework of officially approved statewide goals and policies directed to land use, population growth and distribution, development, open space, resource preservation and utilization, air and water quality, and other related physical, social and economic development factors . . ." (§ 65030.1). Thus, the Legislature has declared the state's land use policies include "protect[ing] California's land resource, to insure its preservation and use in ways which are economically and socially desirable in an attempt to improve the quality of life in California" (§ 65030), and ensuring "land use decisions be made with full

knowledge of their economic and fiscal implications, giving consideration to short-term costs and benefits, and their relationship to long-term environmental impact as well as long-term costs and benefits" (§ 65030.2).

To implement the foregoing policies, each California city must "adopt a comprehensive, long-term general plan for the physical development of the . . . city" (§ 65300), which contains an integrated and internally consistent "statement of development policies . . . setting forth objectives, principles, standards, and plan proposals" (§ 65302), and cover at least the following seven areas, called "elements": land use, traffic circulation, housing, conservation, open space, noise and safety. (§§ 65300.5, 65302, 65303; see also *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 773 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) After adopting a general plan, a city may also adopt a specific plan "for the systematic implementation of the general plan for all or part of the area covered by the general plan." (§ 65450.) "Among other things, a specific plan must contain standards and criteria by which development will proceed, and a program of implementation including regulations, programs, public works projects, and financing measures. [Citations.]" *(Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1196 [52 Cal.Rptr.2d 518].)

The process for preparing, adopting and amending a general plan and a specific plan is the same. (§§ 65350 et seq., 65453, subd. (a).) In cases such as this, where the municipality has a separate planning commission to review and recommend action on plans, and the commission has made a recommendation on the adoption or amendment of a plan, "The legislative body shall adopt or amend a . . . plan by resolution, which resolution shall be adopted by the affirmative vote of not less than a majority of the total membership of the legislative body. The legislative body may approve, modify, or disapprove the recommendation of the planning commission," but "any substantial modification proposed by the legislative body not previously considered by the commission during its hearings, shall first be referred to the planning commission for its recommendation." (§ 65356.) ■ The adoption or amendment of a general plan or specific plan constitutes a legislative act. Thus, it is subject to the electorate's exercise of the power of referendum. *(Yost v. Thomas* (1984) 36 Cal.3d 561, 570 [205 Cal.Rptr. 801, 685 P.2d 1152]; *Nelson v. Carlson* (1993) 17 Cal.App.4th 732, 737, fn. 4 [21 Cal.Rptr.2d 485].)

■ Plaintiffs argue that since their proposed specific plan along with the proposed general plan amendment complied with Dana Point's general plan, and the city council found this project superior to the alternative

development proposals, the electorate's failure to approve Measures C and D was unreasonable. We disagree with this assertion. Simply because the city council acted reasonably in approving the proposed development plan does not invalidate the electorate's subsequent rejection of the referendums. The applicability of the power of referendum to the adoption of a specific plan implies the electorate may reject the proposed plan. A rule declaring the voters cannot reject a proposed specific plan falling within the parameters of the city's general plan would render the exercise of the power of referendum meaningless.

Judicial review of the failure to approve these proposals is limited to whether the electorate's decision was arbitrary or capricious. (*Mitchell* v. *County of Orange* (1985) 165 Cal.App.3d 1185, 1191-1992 [211 Cal.Rptr. 563].) "A law regulating or limiting the use of real property for the public welfare does not violate substantive due process as long as it is reasonably related to the accomplishment of a legitimate governmental interest. [Citations.]" (*Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 908 [223 Cal.Rptr. 379].)

The nature and locale of the Headlands, the number of elements implicated by the proposed specific plan for it, the extensive hearings and potential adverse impacts resulting from development on the property, reflect the city council's decision was not the only reasonable conclusion. In fact, the EIR prepared for the Headlands considered 11 other development alternatives, ranging from the level of development provided in the previous specific plan prepared when the property was under the county's control to a no-development option.

Plaintiffs' reliance on *Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330 [178 Cal.Rptr. 723] is without merit. In *Arnel*, the court invalidated a homeowner group's initiative measure which had rezoned the plaintiffs' adjacent property for only single family residences to prohibit plaintiffs from building moderate income apartments on the land. At the time, the city had a shortage of low- and moderate-income housing and there had been no significant change of conditions between the city's original approval of the owner's project and the initiative.

This case involves referendums for the approval of a specific plan and a general plan amendment. Since timely petitions were filed to present the matters to the voters, the city council's initial approval of the plan and amendment never became effective. (Elec. Code, § 9241.) The subsequent rejection by the voters simply maintained the status quo; it did not repeal a

specific plan previously adopted by the city council. The current general plan contemplates development of the Headlands and the electorate's failure to approve plaintiffs' proposed specific plan did not alter this fact. This case does not involve a dispute between adjacent property owners or an attempt to alleviate a low or moderate income housing shortage in Dana Point. Thus, the failure to approve Measures C and D did not violate plaintiffs' right to due process.

██ Nor does the record support plaintiffs' equal protection claim. " 'Absent the allegation of the invasion of fundamental rights or the existence of a suspect classification, there is no violation of equal protection unless the classification bears no rational relationship to a legitimate state interest. [Citations.] This is true even if some discrimination is alleged.' " (*Del Oro Hills* v. *City of Oceanside* (1995) 31 Cal.App.4th 1060, 1082 [37 Cal.Rptr.2d 677], quoting *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1041 [282 Cal.Rptr. 877]; see also *Stubblefield Construction Co.* v. *City of San Bernardino* (1995) 32 Cal.App.4th 687, 713 [38 Cal.Rptr.2d 413].) Plaintiffs claim the ballot arguments reflect the electorate rejected Measures C and D solely to preserve the Headlands as open space. This claim misrepresents the record. The ballot arguments opposing the measures attacked the proposed plan and amendment on several grounds. Furthermore, the city's general plan still contemplates development of the Headlands. The vote on Measures C and D merely rejected one proposed specific plan for the property.

Plaintiffs also contend the electorate's rejection of the specific plan and general plan amendment constituted a regulatory taking under the Fifth Amendment of the federal Constitution, thereby entitling them to compensation. We conclude a taking has not yet occurred. ██ "A land use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' [Citation.]" (*Dolan* v. *City of Tigard* (1994) 512 U.S. 374, 385 [114 S.Ct. 2309, 2316, 129 L.Ed.2d 304], fn. omitted.) "[T]he focus of both parts of the test is on whether property has been taken without just compensation, not on whether a regulation is in the abstract an invalid one; the inquiry must be what effect the regulation has on affected property owners." (*Del Oro Hills* v. *City of Oceanside, supra*, 31 Cal.App.4th at pp. 1074-1075, fn. omitted.) Unless an unreasonable delay is shown, the burdens imposed on a landowner during the government's decisionmaking process on land use regulations does not constitute a taking. (*Agins* v. *City of Tiburon* (1980) 447 U.S. 255, 263, fn. 9 [100 S.Ct. 2138, 2143, 65 L.Ed.2d 106]; *Guinnane* v. *City and County of San Francisco* (1987) 197 Cal.App.3d 862, 869 [241

Cal.Rptr. 787]; see also *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304, 321 [107 S.Ct. 2378, 2389, 96 L.Ed.2d 250].)

 Implementation of the Planning and Zoning Law in this case substantially advances Dana Point's interest in the orderly development of the city. As noted, the city's general plan contemplates mixed use development on the Headlands. The present focus is on preparing a specific plan for development. There has not been a final decision denying plaintiffs all economically viable use of the property. To date, there has been no allegation or proof the city land use planning process has unduly delayed plaintiffs' development of the Headlands.

But we hasten to add that, at some point, the city's interest in the orderly development of the Headlands must give way to plaintiffs' right to use their property for some economically viable purpose. Given the cost, the amount of effort and the length of time it takes to prepare and approve land use proposals, unnecessary delays in approving a proposed development or repetitive denials of specific plans complying with the city's general plan will amount to a taking requiring Dana Point to pay compensation to plaintiffs. Dana Point was incorporated in 1989 and adopted its current general plan in 1991. Consideration of the development proposal at issue here began in the latter part of 1992. After numerous hearings and revisions, the plan was finally presented to the city council in early 1994. The referendums further delayed a decision on the approval of the proposed plan until November 1994. While Dana Point may not have yet crossed the line between legitimate land use planning and inverse condemnation, it is undoubtedly very close to the edge.

For the foregoing reasons, we reject plaintiffs' constitutional attacks on the referendums at this time.

2. *Consistency Between the City's General and Specific Plans*

 Plaintiffs contend the electorate's rejection of the specific plan was invalid because it violated the requirement that land use regulations be consistent with the city's general plan. While consistency is necessary between a general plan and a specific plan, that requirement has not been violated in this case.

In part, plaintiffs rely on section 65860 which requires consistency between a general plan and "zoning ordinances." (§ 65860, subd. (a).) As plaintiffs note, cases construing section 65860's consistency requirement have invalidated initiatives and referendums which, if enacted, would result

in maintaining or establishing a zoning law inconsistent with a city's general plan. (*Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 540-541 [277 Cal.Rptr. 1, 802 P.2d 317]; *City of Irvine* v. *Irvine Citizens Against Overdevelopment* (1994) 25 Cal.App.4th 868, 879 [30 Cal.Rptr.2d 797]; *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1212-1213 [217 Cal.Rptr. 790].)

Since this case concerns the rejection of a proposed specific plan, section 65860 is inapplicable. Nonetheless, the statutes governing specific plans also contain a consistency requirement. Section 65454 states, "No specific plan may be adopted or amended unless the proposed plan or amendment is consistent with the general plan." But this case involves the preparation of a specific plan for a portion of a newly incorporated city in accordance with its adopted general plan. We are not confronted with the enactment of a land use proposal at odds with the general plan. Upon Dana Point's incorporation, the Headlands was designated a specific plan area under the city's general plan and has been temporarily placed in a no-development category while a specific plan conforming to the general plan is prepared. The result of the November 1994 election was to maintain the status quo pending preparation of an approved specific plan for the Headlands. Thus, the election did not violate the Planning and Zoning law's consistency requirement.

3. *Section 65589.5, subdivision (j)*

 Finally, plaintiffs contend the electorate's rejection of the Headlands' proposed specific plan and the general plan amendment is invalid because it failed to make findings, based on substantial evidence, that the plan would have an adverse impact on public health or safety, and that no alternative method of satisfactorily mitigating or avoiding the impact exists. (§ 65589.5, subd. (j).) We reject this argument for two reasons.

First, section 65589.5 does not apply to this case. It concerns affordable housing developments. In part, subdivision (j) states a local agency cannot disapprove a "housing development project" which complies with the general plan and zoning laws except "upon written findings supported by substantial evidence on the record that" the "project would have a specific, adverse impact upon the public health or safety" and "[t]here is no feasible method to satisfactorily mitigate or avoid the adverse impact."

This case involves approval of a proposed specific plan, not a planning agency's consideration of a housing development project. Section 65589.5 does not define the phrase "housing development project," but the terms development, project and development project are defined in another chapter

of the Planning and Zoning Law relating to the review and approval of development projects. (§ 65920 et seq.) " 'Development means . . . the placement or erection of any solid material or structure; . . . grading, removing, dredging, mining, or extraction of any materials; change in the density or intensity of use of land, including, but not limited to, . . . any . . . division of land . . . ." (§ 65927.) " 'Project' means any activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 65931.) "Development project' means any project undertaken for the purpose of development. . . ." (§ 65928.) It includes "a project involving the issuance of a permit for construction or reconstruction . . . ." (*Ibid.*)

██ Generally, identical words in different parts of the same act or in different statutes relating to the same subject matter are construed as having the same meaning. (*Dept. of Revenue of Ore.* v. *ACF Industries, Inc.* (1994) 510 U.S. 332, 341 [114 S.Ct. 843, 848-849, 127 L.Ed.2d 165]; *In re Marriage of Pinto* (1972) 28 Cal.App.3d 86, 89 [104 Cal.Rptr. 371].) ██ The foregoing definitions apply when a local planning agency is considering a specific construction proposal. Applied to section 65589.5, they would not include the disapproval or conditional approval of a specific plan.

Second, courts have ruled that burdensome statutory requirements mandating a legislative body provide notice, a public hearing and make findings to support its decision, need not be satisfied when the legislation is enacted by the electorate via initiative or referendum. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 588 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *Bank of the Orient* v. *Town of Tiburon* (1990) 220 Cal.App.3d 992, 1003-1004 [269 Cal.Rptr. 690], disapproved on another point in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [872 P.2d 143].) For example, *Bank of the Orient* dealt with a statute permitting a municipality to temporarily impose a moratorium on development, but expressly allowed only two extensions of the moratorium. The city attempted to extend a building moratorium a third time by initiative. The court held the statute's requirements concerning notice, hearings and findings could be excised when a moratorium was enacted by initiative, but held the two extension limit was a substantive requirement that could not be avoided by employing the initiative process. (*Bank of the Orient* v. *Town of Tiburon, supra,* 220 Cal.App.3d at pp. 1003-1004, 1006.)

Thus, the failure to approve the referendums did not violate section 65589.5, subdivision (j).

## Disposition

The judgment is affirmed.

Sills, P. J., and Wallin, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 2, 1997.