**3570 EAST FOOTHILL BLVD., INC., a California corporation, Plaintiff,**

**v.**

**CITY OF PASADENA, a municipal corporation, Defendant.**

**No. CV 95–5592 ABC (RMRx).**

United States District Court,
C.D. California.

Jan. 2, 1996.

**1270**

John H. Weston, Robert A. Sarno, Melanie D. Long, Weston & Sarno, Beverly Hills, CA, for plaintiff.

Cristina L. Talley, Pasadena City Attorney, Pasadena, CA, Benjamin Samuel Kaufman, Deborah J. Fox, Dawn Renae Andrews, Freilich Kaufman Fox & Sohagi, Los Angeles, CA, for defendant.

## AMENDED OPINION ORDER RE: CONSTITUTIONALITY OF CONDITIONAL USE PERMIT AND LIVE ENTERTAINMENT PERMIT ORDINANCES; PERMANENT INJUNCTION

COLLINS, District Judge.

The trial on the merits of Plaintiff's facial constitutional challenges to Defendant City's conditional use permit and live entertainment permit ordinances took place before this Court on November 17, 1995. After reviewing the evidence and materials submitted by the parties, argument of counsel, and the case file, the Court concludes that the City of Pasadena's conditional use permit and live entertainment permit ordinances violate the First Amendment, as applied to the States through the Fourteenth Amendment, and are therefore unconstitutional. Accordingly, the Court hereby ORDERS that the City of Pasadena is hereby permanently enjoined from enforcing the conditional use permit and live entertainment ordinances as against expressive activities protected by the First Amendment.

### I. Factual and Procedural Background

The Plaintiff in this case, 3570 EAST FOOTHILL Blvd., INC. is a California corporation that owns the "Red Hot Theatre/Cafe," a restaurant/lounge/bar in the Defendant CITY OF PASADENA. Plaintiff corporation has operated the "Red Hot Theatre/Cafe" since May 9, 1995. The President of the Plaintiff corporation is Michael Kaltenthlar, who has successfully owned or operated several restaurant or entertainment businesses in several states. Currently, Plaintiff has a conditional use permit that allows for the sale of alcohol and the provision of arcade games, billiards, and shuffleboard as part of a restaurant use.

*See* James Decl., Exhibit D. In addition, Plaintiff has a live entertainment permit that allows "live performances by comedians, magicians and musical acts and dancing by patrons[.]" *Id.* Plaintiff's permits were approved by the City in November 1994 after much debate and public comment. James Decl. ¶ 14.

Plaintiff now wants to add to the "live entertainment" provided at the "Red Hot Theatre/Cafe.". First, Plaintiff would like to "change the character of the live entertainment presented by the business to add theatrical entertainment in the form of expressive erotic dancing by bikini-clad performers instead of, and in addition to, the current entertainment." Kaltenthlar Decl. ¶ 4. In addition, Plaintiff wants to change the "Red Hot Theatre/Cafe" business to include not only "bikini dancing," but also "expressive entertainment in the form of theatrical live dance performances by dancers who, for a portion of their dance performance would appear either wearing only what is commonly known as 'pasties' and a 'G-string,' ... [or] dancing topless but wearing bottoms sufficient to entirely cover their private parts, though not the entirety of their buttocks." Kaltenthlar Decl. ¶ 6.

The City asserts that the "Red Hot Theatre/Cafe" is located in an Industrial General ("IG") zone.[1] In an IG zone, Plaintiff is conditionally allowed to offer the first change in entertainment, "bikini dancing." However, under Pasadena's zoning ordinances, Plaintiff must apply for a new conditional use permit and a new live entertainment permit before changing the character of the entertainment provided at its business. *See* Pasadena Municipal Code ("P.M.C.") § 17.64.120.C; *see also* James Decl., Exhibit D, at p. 135 ("Any change deemed significant by the Zoning Administrator in the live entertainment ... require[s] a new conditional use permit."). According to Plaintiff, City officials have warned him that he would be "vulnerable to arrest and prosecution for violating the [Conditional Use Permit] and live entertainment permit provisions" if he were to begin showing "bikini dancing" without first obtaining permits. Kaltenthlar Decl. ¶ 4.

Plaintiff has not applied for a new conditional use permit or a live entertainment permit. The President of Plaintiff corporation, Michael Kaltenthlar, states that City officials have informed him that such permit applications would be denied because Plaintiff's proposed entertainment would not be "consistent with the type of entertainment that should be permitted in that area." *See* Kaltenthlar Decl. ¶ 4. In addition, Plaintiff also asserts that the permitting ordinances themselves are facially unconstitutional because they constitute prior restraints in violation of the First Amendment, as applied to the States through the Fourteenth Amendment. Plaintiff argues that the conditional use permit provisions unconstitutionally confer excessive substantive discretion on the permitting officials. In addition, Plaintiff challenges both the conditional use permit and live entertainment permit ordinances as procedurally defective.

On August 21, 1995, Plaintiff filed a Complaint against the City, under 42 U.S.C. § 1983, seeking a declaratory judgment that Pasadena's permitting ordinances are unconstitutional on their face.[2] In addition to a declaratory judgment, Plaintiff seeks injunctive relief, damages, costs, and attorney's fees under 42 U.S.C. § 1988. On October 17, 1995, Plaintiff filed a First Amended Complaint on the same grounds, seeking similar relief. Also on October 17, 1995, Plaintiff applied for a temporary restraining order

---

1. Plaintiff disputes that the "Red Hot Theatre/Cabaret" is in an IG Zone. Plaintiff asserts that, as of January 23, 1995, Pasadena changed the zone in which Plaintiff's restaurant is located to a Commercial General ("CG") Zone. This dispute is not relevant to the issue presented in this Order.

2. In addition, Plaintiff claims that the City's entire adult business zoning scheme is unconstitutional because it does not provide adult businesses with a reasonable opportunity for expression, in violation of the Supreme Court's decision in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Plaintiff has applied for a separate Order preliminarily enjoining the City from enforcing its adult business zoning ordinances. The constitutionality of the zoning ordinances is not relevant to this Order, however.

("TRO") to enjoin the enforcement of Pasadena's conditional use permit and live entertainment permit ordinances. On October 26, 1995, the Court granted Plaintiff's TRO, thus enjoining the enforcement of the City's permitting ordinances. The TRO effectively allowed Plaintiff to begin offering "bikini dancing" at the restaurant without the necessity of applying for additional permits.[3] According to Plaintiff's President's testimony at trial, Plaintiff is in fact currently offering "bikini dancing."

In its October 26, 1995 Order, the Court consolidated the trial on the merits of Plaintiff's challenge to the permitting ordinances with the hearing on Plaintiff's application for an Order preliminarily enjoining Pasadena's adult business zoning scheme.[4] This Order constitutes the Court's findings and judgment on the constitutionality of the conditional use permit and live entertainment permit ordinances.

## II. Discussion

The trial on the merits of Plaintiff's facial constitutional challenges to Pasadena's conditional use permit and live entertainment permit ordinances took place on November 17, 1995. Plaintiff seeks an Order declaring that the City's conditional use permit and live entertainment ordinances are facially unconstitutional prior restraints. In addition, Plaintiff seeks an Order permanently enjoining the enforcement of the permitting ordinances on the ground that they are unconstitutional prior restraints on speech. The Court will address these issues in turn.

## A. Constitutionality

As discussed above, Plaintiff owns a building and operates a restaurant known as the "Red Hot Theatre/Cafe." The restaurant has been zoned in an IG zone, where live entertainment is a *conditionally* permitted use. As discussed above, Plaintiff currently possesses a live entertainment permit and conditional use permit for its present use, as a restaurant with alcoholic beverage service which presents theatrical entertainment performances (e.g. magicians, comedians, etc.). However, Plaintiff now wants to offer "bikini dancing" (as well as, ultimately, semi-nude dancing).[5] Under Pasadena Municipal Code § 12.64.120, "[i]f another type of entertainment is proposed, a new conditional use permit must be obtained." Therefore, Plaintiff must obtain a new conditional use permit and a new entertainment permit before changing the type of entertainment presented at the "Red Hot."[6] According to Plaintiff, City officials have warned him that he would be "vulnerable to arrest and prosecution for violating the [Conditional Use Permit] and live entertainment permit provisions" if he were to begin showing "bikini dancing" without first obtaining permits. Kaltenthlar Decl. ¶ 4.

Plaintiff has not filed for a new conditional use permit or a live entertainment permit.[7]

3. This is because the City asserts that Plaintiff is in an IG Zone, where non-adult "live entertainment" is permitted. (Adult entertainment is permitted in only CG Zones). "Bikini dancing" is non-adult entertainment because it does not relate to "specified sexual activities" or reveal "specified anatomical areas," as defined in P.M.C. §§ 17.12.042, 17.12.208, & 17.16.050.

4. The issues raised by Plaintiff's application for a preliminary injunction will be addressed in a separate Order.

5. Because "bikini dancing" is not an "adult business," it falls under the more general category of "live entertainment," conditionally permitted in the IG Zone. By contrast, semi-nude dancing, because it reveals "specified anatomical areas," as defined in P.M.C. § 17.12.042, is an "adult business" and is conditionally permitted in CG Zones only. *See* P.M.C. § 17.28.020. Regardless of which zone "Red Hot" is in, it is still subject to the conditional use permit and live entertainment permit ordinances at issue in this Order.

6. On September 11, 1995, the Pasadena City Council refused to waive the permit requirements with regard to Plaintiff's proposed new uses. Weston Decl. ¶ 11.

7. This does not affect Plaintiff's standing to bring this case, a facial challenge to the zoning ordinances under the prior restraint, overbreadth and vagueness doctrines. *See Dease v. City of Anaheim,* 826 F.Supp. 336, 340 (C.D.Cal.1993). In addition, "[i]n the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates broad licensing discretion to an administrative office, whether or not [Plaintiff's] conduct could be proscribed by a properly drawn statute, and whether or not [Plaintiff] applied for a license." *Lakewood v. Plain Dealer Co.,* 486 U.S. 750, 756, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988).

This is not only because Plaintiff believes the licensing ordinances to be unconstitutional, but also because City officials have informed Mr. Kaltenthlar that such a permit application would be denied. Kaltenthlar Decl. ¶ 4. The Court now turns to the constitutionality of these permitting ordinances.

### 1. The Constitutional Standards

■■■ It is well-established that non-obscene live adult entertainment is expressive conduct protected by the First Amendment, as applied to the states through the Fourteenth Amendment. *See, e.g., Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 111 S.Ct. 2456, 2457, 115 L.Ed.2d 504 (1991); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee"); *TK's Video, Inc. v. Denton County*, 24 F.3d 705, 707 (5th Cir.1994) ("Erotic nonobscene printed matter, films, and live entertainment are sheltered by the First Amendment"); *Acorn Investments, Inc. v. City of Seattle*, 887 F.2d 219, 224 (9th Cir.1989) (City ordinance imposing license fees on peepshows violated First Amendment). *See also City of Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (adult-oriented films also protected by First Amendment). However, despite the fact that adult entertainment is protected by the First Amendment, local governments do have the right to impose time, place, and manner restrictions on this type of speech, so long as the regulations "allow[ ] for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. at 930; *see also Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976) ("Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification[.]"); *Barnes*, 501 U.S. at 566, 111 S.Ct. at 2460 ("nude dancing ... is expressive conduct within the outer perimeters of the First Amendment").

■■■ Local governments can require a business to obtain a permit or license before engaging in or offering live adult entertainment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990) (stating that prior restraints are not unconstitutional per se). However, such a licensing scheme qualifies as a prior restraint, "because it essentially requires the permittee to obtain the government's permission or approval before engaging in an act of speech." *Dease*, 826 F.Supp. at 342. As a prior restraint, a licensing scheme "bear[s] a heavy presumption against its constitutionality[.]" *Id.*, 493 U.S. at 225, 110 S.Ct. at 604. Accordingly, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). *See also FW/PBS*, 493 U.S. 215, 226, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990) (quoting *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988)) ("a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'"); *Gaudiya Vaishnava Society v. City and County of San Francisco*, 952 F.2d 1059, 1065 (9th Cir. 1990), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992) ("a law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials."). Furthermore, a permitting scheme that "fails to place limits on the time within which the decision-maker must issue the license is impermissible." *FW/PBS*, 493 U.S. at 226, 110 S.Ct. at 605; *see also Chesapeake B & M, Inc. v. Harford County*, 58 F.3d 1005, 1010 (4th Cir.1995) ("unbridled discretion exists when a licensing scheme lacks adequate procedural safeguards to ensure a sufficiently prompt decision."). In addition, the licensing ordinance must provide for the possibility of "expeditious judicial review[.]" *Freedman v. Mary-*

**1274**

*land,* 380 U.S. 51, 58–60, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1965).

### 2. The Conditional Use Permit Ordinances

Plaintiff asserts that the Pasadena CUP ordinances are unconstitutional prior restraints on two separate grounds. First, Plaintiff asserts that the CUP ordinances confer excessive substantive discretion on the licensing authorities. Second, Plaintiff argues that the CUP ordinances are procedurally defective because they do not specify brief time limits within which a permit application must be approved or denied.

#### a. Excessive Substantive Discretion

As stated, Plaintiff first argues that the conditional use permit provisions are unconstitutional because they give "unbridled discretion" to the licensing authorities. Under P.M.C. § 17.88.020.C.3, City officials can deny a conditional use permit if the proposed use would be "detrimental to the public health, safety, or welfare of persons residing or working adjacent to the neighborhood of such use, or injurious to properties or improvements in the vicinity."

Plaintiff argues that under the Supreme Court's decision in *Shuttlesworth, Dease v. City of Anaheim,* 826 F.Supp. 336 (C.D.Cal. 1993), and other rulings, the CUP ordinances are facially unconstitutional. In *Shuttlesworth,* the Supreme Court struck down a licensing ordinance that allowed an official to deny a permit if its issuance would threaten "the public welfare, peace, safety, health, decency, good order, morals, or convenience" of the community. 394 U.S. at 149, 89 S.Ct. at 938. The Court found that the ordinance vested "virtually unbridled and absolute power" in the licensing authority. *Id.* at 150, 89 S.Ct. at 938. In *Dease,* the court found identical provisions to those at issue in this case to give too much discretion to the licensing authority, and therefore invalidated the ordinance as an unconstitutional prior restraint. *See also Wolff v. City of Monticello,* 803 F.Supp. 1568, 1574 (D.Minn.1992) (ordinance stating what persons or places are *ineligible* for a permit is unconstitutional because it does not state what persons or places are *eligible* for a permit); *Santa Fe*

*Springs Realty Corp. v. City of Westminster,* 906 F.Supp. 1341, 1364 (C.D.Cal.1995) ("The Supreme Court has repeatedly struck down ordinances that make the enjoyment of constitutionally guaranteed freedoms contingent upon the uncontrolled will of an official.").

As recently stated by the district court in *Santa Fe Springs,* a conditional use permit ordinance for adult businesses "must contain criteria which are sufficiently narrow, objective and definite so as to eliminate any possibility for content-based censorship." *Santa Fe Springs,* 906 F.Supp. at 1365. The prime constitutional concern in a case such as this one is the threat that a licensor, unconstrained by narrow, objective criteria, will covertly discriminate against constitutionally protected speech, and then later craft "findings" that more closely conform to constitutional standards. This problem is especially acute with politically unpopular, but protected forms of speech such as erotica. Ultimately, "[p]ermitting government officials unbridled discretion in determining whether to allow protected speech presents an unacceptable risk of both indefinitely suppressing and chilling protected speech." *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 58 F.3d 988, 994 (4th Cir.1995), *cert. denied* — U.S. —, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995).

In this case, as discussed above, Pasadena officials can deny a conditional use permit if the proposed use would be "detrimental to the public health, safety, or welfare of persons residing or working adjacent to the neighborhood of such use, or injurious to properties or improvements in the vicinity." P.M.C. § 17.88.020.C.3. This language is almost identical to the language struck down as unconstitutional in *Shuttlesworth* and *Dease.* Indeed, the provisions at issue in this case do not provide "narrow, objective, and definite standards to guide the licensing authority" at all. *Shuttlesworth,* 394 U.S. at 150–51, 89 S.Ct. at 938. On the contrary, they grant City officials unbridled discretion to grant permits so long as they "will not be detrimental to the public health, safety, or welfare of persons residing or working in or adjacent to the neighborhood of such use, or injurious to properties or improvements in

the vicinity." P.M.C. § 17.88.020.C.3. And, although the City has argued that the licensing authorities are required to make findings, this entirely misses the point of a *facial* challenge. One of the great dangers of a prior restraint scheme with excessive substantive discretion is that the licensor can censor speech for impermissibly content-based covert motivations, and then later rationalize the decision with seemingly permissible content-neutral reasons.

Thus, under *Shuttlesworth, FW/PBS* and *Dease,* it is clear that the Pasadena conditional use permit ordinances confer excessive substantive discretion on the licensing authorities. Certainly, ·a locality is entitled to craft procedures that allow the general populace a voice in determining where such sensitive uses as "bikini dancing" can locate within the bounds of their city. However, these procedures must meet constitutional standards, and must not operate to suppress or chill protected speech. Because the Pasadena CUP ordinances do not meet these constitutional standards, they must be invalidated as an unconstitutional prior restraint.

**b. Failure to Specify Brief Time Limits**

Plaintiff also asserts that the conditional use permit ordinances are unconstitutional because they do not specify brief time limits for decision. Specifically, Plaintiff states that the CUP ordinances fail to provide a "specified and brief period by which a conditional use permit application is guaranteed a final judicially reviewable decision on the application." Memorandum at 18. Plaintiff further states that the ordinances allow an excessive period of time for completing all administrative review of conditional use permit applications. Lastly, Plaintiff argues that the ordinances are unconstitutional because they fail to provide a speech-protective remedy in the event that the City violates its own procedural time limits.

Under P.M.C. § 17.80.030, the process of applying for a conditional use permit begins with an application. Within an amount of time determined by California law, the director of planning must determine whether a conditional use permit application is complete. P.M.C. § 17.80.030. If the director determines that the CUP application is complete, he or she must schedule a public hearing on the application. P.M.C. § 17.80.040.A ("Unless otherwise provided, a noticed public hearing shall be held for all discretionary permits[.]"). Under § 17.80.040, there is no required time frame governing *when* such a hearing must be scheduled. In addition, under § 17.80.050.A, a public hearing can be continued without additional public notice. Then, on the same day as the hearing, the zoning administrator must "approve, conditionally approve, or disapprove" the CUP application. P.M.C. § 17.80.050.

Time limits do exist in this process. However, there is one large gap: the zoning administrator has complete discretion in determining *when* a public hearing will take place on the conditional use permit application. This is similar to the gap addressed in *FW/PBS.* In *FW/PBS,* the ordinance in question did set time limits for decisions, but the time limits only went into effect after an inspection. However, there was no time limit within which an inspection had to occur. *See FW/PBS,* 493 U.S. at 227, 110 S.Ct. at 605; *see also Redner v. Dean,* 29 F.3d 1495, 1501 (11th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995) (ordinance unconstitutional because gaps in process could "result in indefinite suppression of expressive activity."). Similarly, in this case, under the Pasadena ordinances, there is no time limit within which a public hearing *must* occur. Therefore, until the public hearing occurs, there could be an "indefinite suppression of expressive activity." *Redner,* 29 F.3d at 1501.

In addition, after an applicant appeals a negative determination, the board of zoning appeals must schedule an hearing within 60 days of the regular meeting following the receipt of the appeal. P.M.C. § 17.104.050. After this hearing, the board must affirm, modify, or reverse the decision within 30 days. *Id.* If the board fails to act within the time limit, then the original decision is deemed affirmed. *Id.* Thus, the board need only affirmatively act when it wants to reverse the denial of a CUP.

The City asserts that the ordinances are constitutional despite these gaps because *state* law imposes time limits on the permitting process. First, the City argues that 14 Cal.Regulations Code §§ 15107–08 impose time limits on discretionary application decisions. *See* City's Opposition at 23–24. However, these provisions do not appear to be relevant to this case. Sections 15107–08 of the California Regulations Code set guidelines for implementing the California Environmental Quality Act ("CEQA") (Cal.Pub. Res.Code §§ 21000 *et seq.*) and address the issue of when an agency completes and certifies a final Environmental Impact Report ("EIR"). They have nothing to do with the approval of a conditional use permit.

The City also asserts that the California Permit Streamlining Act (Cal.Govt.Code §§ 65920 *et seq.*) [8] "provides a time frame for completion of the decision process." City's Supplemental Opposition at 25. But the Permit Streamlining Act only applies to "development projects" which require the issuance of a permit for construction or reconstruction. *See* Cal.Govt.Code § 65928. Because offering bikini dancing or adult dancing would not necessarily require construction or reconstruction, the time limits in the Permit Streamlining Act do not apply. *See also People v. Library One, Inc.*, 229 Cal.App.3d 973, 987 n. 5, 280 Cal.Rptr. 400 (1991) (finding the Permit Streamlining Act irrelevant to a case similar to this one because "the cases construing the Permit Streamlining Act appear uniformly to involve what might be referred to as traditional real estate development[.]").

Finally, the City asserts that CEQA itself imposes time limits on the permitting process. But the City has not shown *how* the CEQA time limits apply to the CUP or live entertainment permits at issue in this case. The City only conclusorily asserts that it must comply with CEQA's "strict timetable." By its terms, CEQA applies only to "projects" that may have "significant envi-

ronmental effects." *See* Cal.Pub.Res.Code § 21002. A "project" is "broadly" defined as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment[.]" § 21065; *see also Burbank–Glendale–Pasadena Airport Authority v. Hensler*, 233 Cal.App.3d 577, 591, 284 Cal.Rptr. 498 (1991). Thus, the threshold issue in determining whether CEQA applies is whether the proposed use is a "project." Indeed, if a use is *not* a project, no further environmental review is required, and the CEQA time limits cannot apply. *See* Environmental Guidelines for the City of Pasadena, attached to James' Suppl.Decl. as Exhibit F, p. 387. The City has not offered any evidence to indicate that the live entertainment proposed by Plaintiff is a "project" within the meaning of CEQA. Indeed, when given the opportunity at trial, the City declined to do so.

Furthermore, the City found Plaintiff's *prior* proposed use to be "categorically exempt" from the requirements of CEQA. *See* James Decl., Exhibit D at 132 (Conditional Use and Live Entertainment Permit (dated 11/18/94)). Thus, the CEQA time limits did not apply to the Plaintiff's prior application. The City has not offered any argument as to why Plaintiff's proposed new uses would not be similarly "exempt" from the requirements of CEQA, other than because of the content of Plaintiff's proposed new expression. Indeed, Plaintiff's prior change in use had equivalent potential environmental effects. Prior to the "Red Hot," the lot at issue in this case contained a family-type restaurant. The City approved Plaintiff's change to a restaurant with live entertainment, and found this change to be categorically exempt from CEQA. Only now, when Plaintiff seeks to change the *type* of live entertainment offered does the City assert that CEQA applies.[9] Evidently, despite the City's arguments, there is no guarantee that the CEQA time

---

8. The City refers to the "Permit Streamlining Act" rather cryptically. Not only does the City not provide a citation for the Act, the City also does not point to a specific provision in the Act imposing time limits.

9. Without further explanation, this point raises the concern that the City applies CEQA selectively, depending on the content of the expression or live entertainment.

limits will apply to any particular proposed use.

■ Moreover, even if the CEQA time limits *were* to apply, they still would not save the conditional use permit ordinances. Under Pasadena's Environmental Guidelines implementing CEQA (attached as Exhibit F to the James Declaration), the decision on a project with an EIR may take as long as 365 days. *See* Exhibit F, at p. 386. In the course of the trial, the City asserted that most non-development projects do not require an EIR. However, the City's statement admits the possibility that some non-development projects *do* require an EIR. If so, the only absolute time limit on the application process is 365 days. A 365 day process to determine whether an application will be approved for a permit to engage in constitutionally protected expressive activity is plainly neither a reasonable nor a brief time limit under *FW/PBS*. *See, e.g., 11126 Baltimore Blvd.*, 58 F.3d at 997 (holding that a 150 day time limit on use permit application, similar to the Pasadena CUP, violated *FW/PBS* standard). Such a lengthy time limit "contains the same vice as a statute delegating excessive administrative discretion." *FW/PBS*, 493 U.S. at 226–27, 110 S.Ct. at 605 (quoting *Freedman*, 380 U.S. at 56–57, 85 S.Ct. at 738). In essence, "[a] scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 605. While a 365 day period may indeed be appropriate for evaluating the environmental effects of a high-rise office building · development, 365 days is an unreasonably long period of time to evaluate the propriety of constitutionally protected speech, and certainly raises the spectre of an indefinite suppression.

Thus, the state law provisions, even if applicable, cannot save the conditional use permit ordinances. Considering the gaps in this system (such as the lack of time limits within which a public hearing must take place), the conditional use permit ordinances are unconstitutional because they do not specify brief

time limits within which a CUP must be approved or denied.

**3. The Live Entertainment Permit Ordinances**

Plaintiff asserts that the live entertainment permit ordinances are also unconstitutional because they fail to specify brief time limits.[10] Plaintiff argues that the live entertainment permitting ordinances: (1) fail to provide a specified and brief time period by which the police must investigate an applicant; (2) allow an excessive and indeterminate period of time for completion of all city department assistance to the police department in the investigation process; (3) fail to provide a speech-protective remedy for police violations of the administrative time limits; (4) fail to provide any objective criteria setting forth what "other related information" the police may require from an applicant; and (5) fail to provide objective criteria which govern the exercise of the police determination that "all applicable provisions … with regard to such permit application have been met" by an applicant seeking an entertainment permit. *See* Memorandum at 19.

■ Under P.M.C. § 5.36.090, after an application for a live entertainment permit has been received, the police must conduct "an appropriate investigation to determine whether the permit should be issued[.]" In conducting this investigation, the police "may request the assistance of any city department for the purpose of such investigation and … shall consider any relevant factual material relating to the application." *Id.* This provision alone fails under the *FW/PBS* standard. As in *FW/PBS*, the ordinance in question "does not set a time limit within which the [investigations] must occur." *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 605. Thus, even though an application is pending, the police could theoretically take forever in investigating the applicant's background and property. *See* P.M.C. § 5.36.090.

The City again argues that California state law provides for time limits on the live enter-

10. Plaintiff apparently has not challenged the live entertainment ordinances on the grounds that they confer excessive discretion on the licensing authority. Indeed, under P.M.C. § 5.36.110, the standards are extremely specific.

tainment permitting process. But, as discussed above, California Regulations Code §§ 15007–08 clearly do not apply, and a live entertainment permit is not a development project under the Permit Streamlining Act. In addition, a live entertainment permit does not appear to be a "project" within the meaning of CEQA or Pasadena's CEQA guidelines. *See* Exhibit F at 387 ("'Project' is defined as an action, which has the potential for resulting in a physical change in the environment.").[11] And, in any case, the City found Plaintiff's prior live entertainment permit application to be "categorically exempt" from the requirements of CEQA. Furthermore, as discussed above, the 365 day time limit is plainly not a reasonable nor a brief time limit under the *FW/PBS* standard.

Therefore, it is clear that the live entertainment ordinances do not provide specific, brief time limits. Therefore, they must fail under *FW/PBS*.

#### 4. The City's Other Arguments

In addition to the City's citation of cases in defense of its CUP and live entertainment permit schemes, the City also defends its ordinances on several other grounds. First, the City argues that Plaintiff cannot bring a facial challenge to the licensing statutes because the statute of limitations has long since expired. Second, the City asserts that because Plaintiff did not challenge the limitations present in its original CUP, Plaintiff cannot now challenge the CUP ordinances because of res judicata. Third, the City argues that the Court should not "usurp the City's planning process." Fourth, the City argues that Pasadena's CUP ordinances should be entitled to greater deference because they also regulate the sale of alcohol.

##### a. Statute of Limitations

■ The City first argues that there is a one-year statute of limitations to facial challenges to zoning ordinances. The City asserts that this one-year statute of limitations runs from the time the ordinance was *passed*. Therefore, because the zoning ordinances in question here were passed long ago, the City argues that Plaintiff is barred from bringing

a facial challenge and is limited to an "as-applied" challenge.

In support of this argument, the City cites several takings cases, but no cases in the First Amendment context. *See, e.g., De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084 (9th Cir.1991) and *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994). The City's argument is flawed because it

> ... misapprehends the differences between a statute that effects a taking and a statute that inflicts some other kind of harm. In other contexts, the harm inflicted by the statute is continuing, or does not occur until the statute is enforced—in other words, until it is applied. In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed.

*Levald*, 998 F.2d at 688. However, a statute that, on its face, violates the First Amendment's guarantee of free speech inflicts a continuing harm. Either a person is punished for speaking, or refrains from speaking for fear of punishment. This harm continues until the statute is either repealed or invalidated. Thus, the takings cases cited by the City are simply irrelevant to this First Amendment case. Therefore, Plaintiff is not barred by the statute of limitations from bringing this facial challenge. *See also Santa Fe Springs*, 906 F.Supp. 1341, 1364–65 (refusing to apply the takings rule to a First Amendment case).

##### b. Res Judicata

The City cites *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995) for the proposition that res judicata may "bar a plaintiff from pursuing a Section 1983 claim in federal court where it has failed to timely challenge an administrative decision in which its rights

---

11. Indeed, it is hard to imagine that every proposed live entertainment use, such as the one at

issue in this case, is a "project" under the CEQA guidelines.

were adjudicated and which has since become final for lack of any direct legal challenge." Opposition at 28.

■■■ While the City accurately cites *Miller*, this argument fails because of a fundamental misconception of the purposes behind the First Amendment. The simple fact that Plaintiff applied for a particular CUP, for a particular use, in 1994, does not bar Plaintiff from changing its mind, and offering a different idea or mode of expression. Although Plaintiff did not apply for a permit to allow "bikini dancing" in its 1994 CUP application, Plaintiff now seeks a different form of expression. Res judicata or the rule against claim splitting does not bar Plaintiff from expressing a different thought. Similarly, the rule does not bar Plaintiff from bringing a First Amendment-based challenge to the ordinances (in lieu of expressing that different thought). In essence, Plaintiff's two potential uses (its current use and the proposed use) are not the same "claim" for the purposes of res judicata.[12] Rather, they are two expressive ideas. It would pervert the purposes of the First Amendment to hold that the acceptance of the first idea necessarily bars consideration of the second. Therefore, the doctrine of res judicata is simply inapposite to this case.

■■■ Plaintiff's second statute of limitations argument, based on California Government Code § 65907, must similarly fail. *See* Supplemental Opposition at 22–23. While phrased as a statute of limitations argument, it is related to the res judicata contentions. The City argues that because Plaintiff did not challenge the conditions of the prior conditional use permit within 90 days, it is barred from bringing this action. This argument evidences a fundamental misunderstanding of a First Amendment-based facial challenge. This is a facial challenge to the City's entire permitting scheme, based on the First Amendment; not an isolated challenge to a prior conditional use permit. As such, § 65907 simply does not apply.

#### c. Usurping the City's Planning Process

The City also argues that this Court should not "usurp the City's regulatory process for adult uses." Opposition at 30. The City's argument is meritless. In the present context, it is the Court's duty to construe the constitutionality of a challenged ordinance, and, if found unconstitutional, to enjoin its enforcement.

#### d. Twenty–First Amendment

■■■ The City also argues that because of the Twenty–First Amendment, its CUP ordinances are entitled to "greater deference because [they are] a regulation of the sale of alcohol." Supplemental Opposition at 26. The City further argues that "[b]ecause Pasadena has a right under the Twenty–First Amendment to regulate the sale of alcohol, review of its required CUP findings under normal First Amendment standards is improper." *Id.* at 26. This argument similarly misconceives the function of a facial challenge to an ordinance. In a facial challenge, the City's "findings" are irrelevant. Thus, the Twenty–First Amendment does not apply to this case.

### B. Permanent Injunction

■■■ For the reasons discussed above, Pasadena's conditional use permit and live entertainment permit ordinances are facially unconstitutional. Accordingly, the Court issues a permanent injunction, enjoining Pasadena from enforcing the conditional use permit and live entertainment permit ordinances in their current form against expressive activities protected by the First Amendment. Because these ordinances operate as unconstitutional prior restraints to constitutionally protected speech, no adequate legal remedy exists consistent with the fundamental purposes of the First Amendment. Therefore, the Court ORDERS that the City is permanently enjoined from enforcing its conditional use permit and live entertainment permit

---

**12.** Under California law, a "claim" is the "remedial right in favor of a plaintiff for the violation of one 'primary right.' " *Sawyer v. First City Financial Corp., Ltd.,* 124 Cal.App.3d 390, 399, 177 Cal.Rptr. 398 (1981). For example, "the primary right to be free from personal injury has been construed as to embrace all theories of tort which might have given rise to the injury." *Id.* (citing *Panos v. Great Western Packing Co.,* 21 Cal.2d 636, 134 P.2d 242 (1943)).

ordinances against constitutionally protected expressive activities.[13]

## C. Severance

As discussed above, the Court holds in this Order that Pasadena's conditional use permit and live entertainment permit ordinances operate as unconstitutional prior restraints on speech. Plaintiff argues that because of this ruling, the City's entire adult business regulation scheme must be invalidated because, without the permitting ordinances, adult businesses are not "expressly permitted" in any zone.[14] Under Plaintiff's theory, if the permitting ordinances are severed from the rest of the zoning code, the remaining regulations will operate as a total ban on adult businesses, in violation of the Supreme Court's decision in *Schad v. Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (holding that a locality cannot totally exclude all forms of constitutionally protected live entertainment; rather, the locality must leave open "adequate alternative channels of communication").[15]

▐▐▐ "The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987). Ultimately, "[a] constitutionally flawed provision cannot be severed 'if the balance of the legislation is incapable of functioning independently.'" *Dease*, 826 F.Supp. at 345 (quoting *Alaska Airlines*, 480 U.S. at 684, 107 S.Ct. at 1480).

▐▐▐ Plaintiff argues that under *Alaska Airlines*, Pasadena's entire zoning scheme must be invalidated because, without the CUP and live entertainment permit ordinances, the scheme cannot constitutionally function "independently." Plaintiff bases its

---

**13.** Plaintiff has asserted that a permanent injunction should be narrowly tailored to enjoin the City only from enforcing its CUP and live entertainment ordinances against Plaintiff's "bikini dance use and its contemplated 'adult entertainment' use." Plaintiff's Motion to Alter or Amend the Judgment at 4. The Court disagrees. As a general principle, "an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir.1990); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502–03, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985) (stating this general principle in the context of a statute *not* invalidated on its face). In other words, "[i]njunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (citing *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)). In this case, the Court holds that the Pasadena CUP and live entertainment permit ordinances operate as unconstitutional prior restraints on speech. As such, they are *facially* invalid. In the context of a successful facial challenge to an unconstitutional prior restraint, "the facts of the challenging party's case are irrelevant." *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1197 (11th Cir.1991) (citation omitted). "[A] court may invalidate an excessively broad grant of discretion on its face, without regard to the particular facts of the plaintiff's case, because the very existence of the discretion lodged in the public official is constitu-

tionally unacceptable." *Id.* at 1197 (citation omitted). The existence of excessive substantive discretion and the absence of brief time limits render the ordinances facially unconstitutional, not their specific application to Plaintiff's case. Therefore, "to remedy the constitutional violation" (*Toussaint*, 801 F.2d at 1086), the Court permanently enjoins the City from enforcing its facially unconstitutional CUP and live entertainment permit requirements against expressive activities protected by the First Amendment.

**14.** Under P.M.C. § 17.16.050, an adult business is one "based upon materials or performances that depict, describe, or relate to 'specified sexual activities,' or 'specified anatomical areas,'" as defined in §§ 17.12.042, 17.12.208, and 12.16.050. Under the current Pasadena zoning code, adult businesses are conditionally permitted in CG zones only. P.M.C. §§ 17.28.020 & 17.32.030. Because Plaintiff's proposed use would reveal "specified anatomical areas," it constitutes an adult business under the Pasadena Municipal Code.

**15.** In its Motion to Alter or Amend the Judgment, Plaintiff asserts that a ruling on severability is premature at this time. The Court disagrees. In this Order, the Court permanently enjoins the City from enforcing its CUP and live entertainment ordinances against expressive activities protected by the Constitution. The question of severability addresses the logical and necessary effect of the Court's invalidation of the CUP and live entertainment requirements. As such, the severability discussion is not premature.

non-severability argument on a faulty interpretation of P.M.C. § 17.28.020. Under § 17.28.020, uses are classified as conditional ("C") (requiring a conditional use permit), minor conditional ("MC") (requiring a minor conditional use permit), or permitted ("P") (use is unconditionally permitted in the zone). Under § 17.28.020, "[w]here neither 'C,' 'MC' nor 'P' is shown for a use ... that classification is not permitted." Plaintiff asserts that the Court's invalidation of the Pasadena conditional use permit and live entertainment permit ordinances effectively eliminates the "C" requirement from the use entitled "adult businesses." With the "C" requirement eliminated, and with neither a "P" nor an "MC" classification to take its place, Plaintiff argues that adult businesses have suddenly become totally prohibited under the Pasadena Municipal Code, in violation of *Schad.*

■ This argument is not well taken. Under the First Amendment, protected speech is presumptively *permitted. See Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 777, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (1986) ("In the context of governmental restriction of speech, it has long been established that the government cannot limit speech without bearing the burden of showing that its restriction is justified."); Lawrence H. Tribe, *American Constitutional Law* § 12–2, at 790 (1988 ed.) ("Any adverse government action aimed at communicative impact is presumptively at odds with the [F]irst [A]mendment."). The Court's Order invalidates Pasadena's conditional use permit and live entertainment ordinances because they operate as unconstitutional prior restraints on constitutionally protected speech. Because this Order enjoins the enforcement of the conditional use permit and live entertainment ordinances, expressive activities protected by the First Amendment

that previously were only *conditionally* permitted are now *unconditionally* permitted. In essence, because protected speech is presumptively permitted under the First Amendment, the Court's Order invalidating the permitting ordinances has the effect of placing a "P" where there once was a "C" in the ordinance. Indeed, were this not the case, all expressive activities which were formerly *conditionally* permitted would suddenly become prohibited uses, an anomalous result under the First Amendment.

■ As a general rule, a court is "bound to construe a statute to avoid absurd results and favor public convenience." *Bailey v. City of Lawrence, Indiana,* 972 F.2d 1447, 1452 (7th Cir.1992) (applying this principle to the construction of an Indiana statute); *see also Granberry v. Islay Investments,* 161 Cal.App.3d 382, 388, 207 Cal.Rptr. 652 (1984) (under California law, court will construe statute to avoid absurd result). The Supreme Court has further recognized that "[w]here the literal reading of a statutory term would 'compel an odd result' ... we must search for other evidence of [legislative] intent to lend the [statute] its proper scope." *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 509, 109 S.Ct. 1981, 1985, 104 L.Ed.2d 557 (1989)). In this case, as a result of this Court's ruling, P.M.C. § 17.28.020 *could* be read literally to imply that all conditionally permitted uses are now prohibited. However, a ruling that would effect a blanket prohibition on a wide variety of constitutionally protected uses is plainly an "absurd" result, contrary to the City's likely intent as well as the clear import of the First Amendment. Under *Brock,* the Court's Order clearly does not mandate this result.[16]

---

16. Plaintiff asserts that the Court lacks the jurisdiction to so construe the Pasadena ordinances. *See* Plaintiff's Motion to Alter or Amend the Judgment at 6–14. It is indeed true that as a general principle a federal court "lack[s] jurisdiction authoritatively to construe state legislation." *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971). However, the United States Supreme Court has also explicitly approved federal courts' saving constructions of state statutes. *See Brock-*

*ett,* 472 U.S. at 499–500, 105 S.Ct. at 2799–2800; *see also Whelan v. Abell,* 48 F.3d 1247, 1257 (D.C.Cir.1995) (noting the apparent conflict between *Thirty–Seven Photographs* and *Brockett* ). Ultimately, a federal court must "determine [a state] statute's 'allowable meaning ... in a manner that affords the widest latitude to state legislative power consistent with the United States Constitution.' " *Fordyce v. City of Seattle,* 840 F.Supp. 784, 792 (W.D.Wash.1993), *rev'd on other grounds,* 55 F.3d 436 (9th Cir.1995) (quoting

Without the unconstitutional permitting ordinances, Pasadena still retains a working zoning scheme, albeit without pre-use screening authority. All references to permits or to uses that are "conditional" must be modified to eliminate the reference to the unconstitutional permits. Simply put, expressive uses will no longer be "conditioned" on the invalid permitting ordinances. For example, after the Court issued a TRO in October, 1995, Plaintiff was immediately able to offer "bikini dancing" without first obtaining a new conditional use permit and live entertainment permit. Clearly, "live entertainment" was not suddenly completely prohibited in IG zones as a result of the TRO. Similarly, had the "Red Hot" been located in a CG zone, Plaintiff would immediately have been able to offer adult entertainment. Unlike the ordinance at issue in *Dease,* Pasadena's permitting ordinances are not inextricably intertwined with the City's zoning plan, nor with its adult business regulations. Rather, the zoning plan and the adult business regulations exist separate and apart from the permitting regulations; the permitting regulations simply set *conditions* on permitted uses in appropriate zones. Accordingly, the invalidity of the permitting ordinances does not compel the invalidation of Pasadena's zoning map; nor does it compel adult entertainment "as of right" in all zones.[17]

Because the City's zoning regulations are fully operative on their own, the Court holds that the unconstitutional conditional use permit and live entertainment ordinances can be severed from the rest of the zoning scheme.

### III. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1.) The City of Pasadena's conditional use permit ordinances and live entertainment ordinances are hereby declared unconstitutional as to activities protected under the First Amendment;

2.) The City of Pasadena is permanently enjoined from enforcing the conditional use permit and live entertainment permit ordinances in their current form as against expressive activities protected by the First Amendment; AND

3.) The unconstitutional conditional use permit and live entertainment permit ordinances are deemed severable from the remainder of the City of Pasadena's Zoning Code.

**SO ORDERED.**

*Stoianoff v. State of Montana,* 695 F.2d 1214, 1218 (9th Cir.1983)); *see also Santa Fe Springs,* 906 F.Supp. at 1366–67 (construing a Westminster ordinance to avoid an unconstitutional interpretation). The Court's interpretation of the Pasadena zoning ordinances does precisely that.

17. Plaintiff surmises that the City might not want adult businesses to be able to immediately exist in CG Zones. Therefore, Plaintiff argues, the Court should strike down the entire regulatory scheme, mandating that the City reconsider its entire body of zoning regulations (and incidental-ly allowing Plaintiff to offer adult entertainment in the IG Zone). This argument is clearly without merit. Speculation about the City's future legislative decisions does not justify striking down Pasadena's entire adult business regulatory scheme. After this Court's Order declaring unconstitutional the permitting ordinances, the City may choose to amend them to meet constitutional standards or to re-zone its city plan. It will not assist the Plaintiff or the City if this Court invalidates the entire regulatory framework, and the Constitution does not mandate it.