[Civ. No. 12268. Third Dist. Jan. 16, 1970.]

EDWARD L. SILVERA et al., Plaintiffs and Appellants, v.
CITY OF SOUTH LAKE TAHOE et al., Defendants and Respondents.

**COUNSEL**

Max H. Hoseit for Plaintiffs and Appellants.

Melvin E. Beverly and Ralph E. Kingston for Defendants and Respondents.

**OPINION**

**PIERCE, P. J.**—The trial court granted defendants' motion for summary judgment. Plaintiffs appeal from a judgment dismissing their complaint for injunctive and declaratory relief.

 Plaintiffs contend that two ordinances of defendant city, passed under the emergency provisions of Government Code section 65858, are not of the type authorized by that section, in that they temporarily change the zoning law by enlarging rather than restricting the number of uses permitted. We will hold that section 65858 which we quote in the margin[1] was violated and that summary judgment must be reversed.

---

[1]Government Code section 65858 provides in part here material: "Without following the procedures otherwise required preliminary to the adoption of a zoning ordinance, the legislative body, to protect the public safety, health and welfare, may adopt as an urgency measure an interim ordinance prohibiting any uses which may be in conflict with a contemplated zoning proposal which the legislative body, planning commission, or the planning department is considering or studying or intends to study within a reasonable time. Such urgency measure shall require a four-fifths vote of the legislative body for adoption. Such interim ordinance shall be of no further force and effect 90 days from the date of adoption thereof; provided, however, that after

*Facts*

The six appellants and respondent Daniel Kerr are neighboring land-owners in a certain area of respondent city. Prior to June 18, 1968, the city's zoning ordinance for that area contained a maximum height limit of 50 feet and also certain requirements respecting set backs. Kerr, then a new owner, applied to the city planning commission for a variance. On April 3, 1968, it was denied. An appeal was taken to the city council. When the city attorney pointed out there was no legal ground for a variance because the city could not make a finding that the property was being deprived "of privileges enjoyed by other property in the vicinity and under identical zoning classification," the variance was denied. The city, however, then proceeded to adopt the first of the two ordinances now challenged. (No. 164.) By its terms construction of a building at a height in excess of that permitted by the existing ordinance (and nonconforming in other respects) was allowed. By its terms the ordinance expired in 90 days. However, a reaffirming ordinance (No. 165) was adopted thereafter. Later a building permit was issued. This action was filed October 2, 1968.

*Validity of the Two Ordinances*

The statutory scheme for the adoption by California cities of zoning ordinances is embraced in Government Code sections 65850-65861.

A reading of these sections will suffice to show that the process of adopting plans for future zoning development of a city is time consuming. Lengthy studies by a planning commission (or in a city which does not have such a commission by the council itself) may be necessary. There must be a public notice and a hearing, and the adopted ordinance must be published (Gov. Code, §§ 65854, 65855, 65856, 65857.) The ordinances involved in the case before us are admittedly invalid unless they fall within the category of "interim" or "emergency" ordinances authorized by section 65858 (see fn. 1). That they do not, would seem axiomatic. There is nothing in the nature of an "urgency," or which could be characterized as an "interim" use, or as "prohibiting . . . *uses . . . in conflict with a contemplated zoning proposal."* (Italics ours.) These ordinances do not prohibit; they authorize. They permit a use formerly prohibited—construction of a high-rise permanent building. It is thus obvious that the intent of the city counsel was not to adopt any stopgap temporary measure to prevent a use which might interfere with a comprehensive zoning plan later to be adopted. It could only have been, and it was, an attempt to circumvent the statutory

notice pursuant to Section 65856 and public hearing, the legislative body may by a four-fifths vote extend such interim ordinance for one year. Not more than two such extensions may be adopted."

scheme of community development by the misuse of a code section framed to maintain the status quo pending the completion of a comprehensive plan.

Although this is a case of first impression on the precise point at issue, several decisions have involved relevant questions. *Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479], is a landmark case but does not involve interpretation of a zoning statute. It does uphold an interim ordinance. However, the ordinance there involved was calculated to achieve that which the ordinances here are designed to defeat—namely, preservation of the status quo pending establishment of a permanent plan. It temporarily prohibited the construction of multifamily apartment houses pending evolvement of a city-wide plan contemplating development of the affected area as residential. The opinion is a comprehensive treatise on the extent and limitations of the police power as applied to zoning. It was pointed out that the courts may differ with the Legislature as to the wisdom of a particular enactment, but so long as there are considerations of public health, safety, morals or general welfare which the legislative body may have had in mind in adopting a regulatory measure, courts will not interfere. (*Id.* p. 490.) There is a significant statement (on p. 493): "The entrance of one apartment house or flat into a district usually means the entrance of others . . . [which] detracts from the value of neighboring property for home building." The opinion also recognizes (on p. 496) that which we have pointed out above, that the formulation of a comprehensive zoning plan is a time consuming process and that while details are being studied and determined maintenance of the "status quo" should be permitted to the end that the public interests may be properly served. The tenor of the whole opinion is that interim ordinances are exactly what the word "interim" connotes—ordinances limiting land uses during the changeover from one type of zoning to another—and perhaps permitting temporary uses which will not cripple the completed plan when adopted. And interim ordinances are not intended to authorize construction of permanent structures, the inevitable effect of which will be to bypass the requirement of notice and hearing—that kind of fair play which is encompassed in the words "due process." If *Miller, supra,* does not say that, it is an inference properly to be drawn from what it does say. (See also 1 Anderson, American Law of Zoning, § 5.15, p. 275; 18 Syracuse L. Rev. 837, Comments.)

*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, was cited and relied upon by this court in *Metro Realty* v. *County of El Dorado* (1963) 222 Cal.App.2d 508 [35 Cal.Rptr. 480]. In that case, as in *Miller,* an interim ordinance was involved. Metro Realty also construed Government Code section 65806, the predecessor of section 65858 (fn. 1). It also involved an ordinance, temporary in nature, adopted pending formation of a permanent zoning plan. In *Metro Realty* we described such ordinances (on

p. 516) as "stop-gap" or "incubation period" ordinances. We distinguished *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454 [327 P.2d 10], which had struck down a purported interim ordinance, *permanent* in nature. Effectually, it had provided "spot-zoning." The ordinances which we have in the case before us possess those same vices. We have noted above that the Government Code sections (in cases other than interim ordinances) require notice and hearing. In *Metro Realty,* discussing the justification for the fact that interim ordinances require no notice, we said (on p. 518): "The reason no notice is required is that the ordinance is, as its name states, an 'urgency' measure, the very purpose of which to preserve the status quo would be destroyed if notice and hearing were required. *When the permanent plan and a zoning ordinance thereunder are before the county for adoption, notice and a hearing will be required as an essential part of procedural due process. (Gilgert* v. *Stockton Port Dist.,* 7 Cal.2d 384, 391 [60 P.2d 847].)" (Italics ours.)

Respondents urge that the two ordinances here involved *are* in fact "prohibitory" ordinances and, therefore, fit the specifications of section 65858. By permitting certain uses these ordinances, they say, effectually exclude all other uses. This panacean conclusion seizes upon language in *Mang* v. *County of Santa Barbara* (1960) 182 Cal.App.2d 93, 99 [5 Cal. Rptr. 724], where the court said that an ordinance permitting only certain uses in effect prohibited all other uses. But the circumstances in that case were quite different from ours. In that case the landowner's property had been used for grazing purposes and was unzoned before the county enacted its interim ordinance temporarily zoning a large area for agricultural uses only, pending adoption of a permanent ordinance (which was subsequently actually adopted on notice and after hearing). The effect of that interim ordinance was to prohibit a use (construction of a trailer park) which formerly had been permitted. That was neither the purpose nor the effect of the ordinances we consider here. Through a "back-door" ruse and acting summarily, the city sought to authorize a high-rise building. Although called "interim" ordinance, ordinances Numbers 164 and 165 were permanent. They were adopted in violation of the zoning statutes and procedural due process.

The judgment is reversed.

Friedman, J., and Janes, J., concurred.

A petition for a rehearing was denied February 10, 1970, and respondents' petition for a hearing by the Supreme Court was denied March 11, 1970.