CR OF RIALTO, INC., a California corporation,

v.

CITY OF RIALTO, a municipal corporation.

No. EDCV 96–0171 RT (VAPx).

United States District Court,
C.D. California.

March 27, 1997.

See also 964 F.Supp. 1401.

G. Randall Garrou, John H. Weston, Weston, Garrou & DeWitt Los Angeles, CA, for Plaintiff.

Robert A. Owen, City Attorney, Freilich, Kaufman, Fox & Sohagi, Deborah J. Fox, Terry P. Kaufmann Macias, Los Angeles, CA, for Defendant.

TIMLIN, District Judge.

PROCEEDINGS: Amendment To a Portion of The Court's Statement of Intended Decision, Filed October 11, 1996, Regarding Plaintiff CR of Rialto, Inc's Application for Preliminary and Permanent Injunctive Relief

Counsel for the parties consented in a telephonic conference on April 25, 1997, that pages 17 through 30 of the Court's intended decision on application for a preliminary and permanent injunction, filed October 11, 1996, may be amended as follows:

## I. CR Rialto's Application for a Permanent and Preliminary Injunction

On July 10, 1996, plaintiff CR of Rialto, Inc. ("CR Rialto") filed an *ex parte* application for a temporary restraining order ("TRO") seeking that it be allowed to "return" to providing "erotic performances" at its location at 312 South Riverside Avenue in Rialto, California (the "Riverside Avenue premises"). According to CR Rialto, the "erotic performances" offered at the Riverside Avenue premises defined it as an "adult oriented business" as that term has been used in the City of Rialto's ("City") Municipal Code ("Code"). CR Rialto contended that it had ceased offering these "erotic performances" in light of the City's recent Urgency Ordinance No. 1242 which placed a moratorium on issuing permits to adult business applicants except for applicants in certain designated areas of the City who obtained an "exception permit." The Court denied CR Rialto's TRO application on the ground that CR Rialto had not established that it had standing to seek a TRO because the Riverside Avenue premises are located in a Commercial Support Zone ("C–S"), and the City had never permitted adult uses in that zone. At the same time, the Court granted CR Rialto's request to consolidate the hearing on the preliminary injunction with a trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, limiting the hearing on the preliminary and permanent injunction to a facial challenge to the City's adult business regulations.

CR Rialto is now requesting that the Court permanently enjoin the City from enforcing its zoning and permit ordinances against CR Rialto anywhere in the City or, in the alternative, if the Court denies that relief, a preliminary injunction enjoining the City from enforcing its zoning and permit ordinances against CR Rialto at the Riverside Avenue premises.

### A. Background

On March 19, 1985, the City enacted interim urgency ordinance Nos. 923 and 928 which created a moratorium on issuing any permits to new retail adult businesses throughout the City. The City enacted another interim urgency ordinance, No. 937, on August 5, 1985 (collectively the "1985 Urgency Ordinances"), which imposed zoning and licensing restrictions on all adult entertainment businesses, temporarily limiting them to C–3 Commercial ("C–3") and C–M Commercial Manufacturing ("C–M") zones and prohibiting them from operating within 1,000 feet of any residential zone. On October 1, 1985, the City adopted Ordinance No. 940 which embodied the provisions of the 1985 Urgency Ordinances and permanently added certain sections to the City's Code, Chapter 18.105 ("Chapter 18.105"), regulating adult uses in the City. Like Urgency Ordinance No. 937, Chapter 18.105 permits adult businesses in two zones, C–3 and C–M, and prohibits them from being located within 1,000 feet of certain specified uses, including residential zones. Section 18.105.050 of Chapter 18.105 of the Code ("Section 18.105.050") also requires that an applicant

for an adult business obtain a conditional development permit ("CDP").

CR Rialto owns a controlling interest in Rialto Pockets, Inc., a California corporation which operates a business at the Riverside Avenue premises. The Riverside Avenue premises are located in a C–S zone, approximately 400 to 450 feet from multi-family residences. This area has been zoned C–S since 1983. CR Rialto claims that its predecessors at the Riverside Avenue premises have been offering adult entertainment at the Riverside Avenue premises for approximately 3 1/2 years. According to CR Rialto, although the entertainment has not involved nudity or topless dancing, it has involved "erotic performances" which render the Riverside Avenue premises an "adult oriented business" as that term is used in the Code. These "erotic expressive activities" purportedly consisted of professional models attired in either lingerie or bikinis who variously danced, modeled, and competed for the entertainment of the customers on a twice a week basis.

The City claims, however, that the Riverside Avenue premises have been operating pursuant to a business license issued for a billiard parlor with some video amusement devices, and that the Riverside Avenue premises have never been approved for a nightclub, adult or otherwise, either expressly or implicitly by the City, and that any such alleged use has been unlawful. The City also contends that a nightclub cannot operate on the Riverside Avenue premises because it could not comply with the additional parking requirements for a nightclub, arguing that under the City's Off–Street Parking standards set forth in Chapter 18.58, an applicant must establish parking compliance for any new use established within a structure.[1]

CR Rialto took over the ownership of Rialto Pockets, Inc. on April 1, 1996, and immediately engaged in minor remodeling; during that time, the erotic performances allegedly being offered ceased. CR Rialto's attorney contacted the City Attorney for the City and informed him that CR Rialto was going to change the nature of the entertainment at the Riverside Avenue premises once the remodeling was completed in order to offer topless dancing by female performers under the name of the Spearmint Rhino.

On May 21, 1996, the City adopted Interim Ordinance No. 1242, which was extended by Interim Ordinance No. 1245 (collectively the "1996 Interim Ordinances"). The Interim Ordinances prohibited the City from issuing discretionary permits to any adult business applicants but did allow adult businesses in C–3, R–C Retail Commercial ("R–C"), and F–C Freeway Commercial Zones ("F–C") if they were not within 1,000 feet of certain specified uses, including residential zones, and contingent upon the applicant's first obtaining an "exception" permit.

CR Rialto makes the following claims: 1) that the Interim Ordinances are void because they were enacted in violation of California Government Code section 65858(a) and (e); 2) the Interim Ordinances would only give nonconforming use status to an adult business and thus do not meet the constitutional requirement of providing a reasonable opportunity to open and operate an adult business; 3) the "exception" provision of the Interim Ordinances is facially void; 4) the CDP requirement of Chapter 18.105 is facially void; 5) the zoning scheme of Chapter 18.105 is unconstitutional because the portion of land within the C–M and C–3 zones that is not within 1,000 feet of residential or some other specified use is so small that it does not provide CR Rialto with a reasonable opportunity for locating an adult business in the City.

### B. Analysis

#### 1. Standing

██ In opposition to CR Rialto's application for a permanent injunction, the City reiterates its earlier opposition to the TRO that CR Rialto does not have standing to

---

1. CR Rialto has not attacked the facial validity of the City's parking regulations in its original or amended complaint and recognizes that resolution of the parking issue (as well as the issue of whether nightclubs of any kind are allowed in the C–S zone) involves "as applied" claims and is not properly before this Court which limited the permanent injunction hearing to facial challenges to the ordinances.

challenge either Chapter 18.105 or the Interim Ordinances because the Riverside Avenue premises are not in a zone which allows adult businesses, and CR Rialto has not attacked the C–S zoning where its business is located. Citing *S & G News, Inc.*, 638 F.Supp. 1060 (E.D.Mich.1986), the City argues that CR Rialto has failed to meet redressability—the third prong of the standing test set forth by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) [2]—because even if this court were to find that Chapter 18.105 or the Interim Ordinances are unconstitutional or ultra vires, CR Rialto still would have no right to establish an adult entertainment business in the C–S zone where the Riverside Avenue premises are located.

CR Rialto contends that the standing problem identified by the Court at the TRO hearing no longer exists because now it is broadly challenging the City's adult business zoning and permit ordinances on the ground that they are facially unconstitutional and thus cannot be enforced against CR Rialto anywhere in the City. For the purposes of obtaining a permanent injunction against enforcement of the allegedly unconstitutional ordinances, CR Rialto argues that it meets all of the prongs of the *Valley Forge* standing test because 1) the allegedly unconstitutional ordinances are causing an injury to CR Rialto in that they are chilling and deterring it from locating and securing an alternative location in Rialto; 2) its injury is being caused by the allegedly unconstitutional ordinances; and 3) its injury will be redressed because if the Court enjoins enforcement of the allegedly unconstitutional ordinances, it will remove the chilling effect of the unconstitutional ordinances on CR's right of expression.

CR Rialto further contends that even if the Court denies its application for a permanent injunction, it still would have standing to seek a preliminary injunction with respect to the Riverside Avenue premises because if "a plaintiff demonstrates that a city's zoning scheme, when viewed as a whole, denies a 'reasonable opportunity' to open and operate an adult entertainment business, anyone who is situated in an appropriate zone for the 'non-adult' business most analogous to the business in question, is in a proper zone to seek the benefit of judicial relief."

■ While CR Rialto's argument that it has standing to make an overall challenge to the City's zoning and permit ordinances on a citywide basis for the purpose of a permanent injunction based on a hypothetical desire to relocate elsewhere in the City is somewhat tenuous, the Court concludes that CR Rialto does have standing on the basis of its assertion that it is currently being chilled as to its First Amendment rights to free expression in its efforts to seek alternative sites to the Riverside Avenue premises because of the alleged unconstitutionality of the City's regulation of adult businesses. With respect to CR Rialto's facial challenge to the CDP requirement of Chapter 18.105 or the "exception" permit requirement of the 1996 Interim Ordinances, CR Rialto has standing to challenge them although it admittedly has never applied for either permit. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1268, 1272 n. 7 (1996).

■ But no matter how framed, the Court concludes that CR Rialto has no standing to seek a preliminary injunction with respect to the specific Riverside Avenue premises in the event the Court denies CR Rialto's application for a permanent injunction. CR Rialto has not cited any authority for its novel argument that because it is in an "appropriate zone for the 'non-adult' business most analogous to the business in question," it has standing to enjoin enforcement of the City's adult use and permit ordinances. Not only is it factually controverted whether the C–S zone is the "most appropriate zone" for

---

**2.** In *Valley Forge*, the Court stated that a plaintiff must establish that it will suffer from an "injury in fact," that the injury is being caused by the act being complained of, and that there is a signifi-cant possibility that the plaintiff's injury will be "redressed" by the relief sought. 454 U.S. at 471–72, 102 S.Ct. at 758.

a non-adult business analogous to the adult entertainment business CR Rialto wishes to establish (and the Court will not resolve such issues on a facial challenge to the constitutionality of the ordinances),[3] but CR Rialto has not explained or cited any authority why being in an "analogous" zone would assist it in meeting the standing requirements of *Valley Forge*.

CR Rialto additionally claims that it has standing with respect to its current location because it, unlike the plaintiff in *S & G News. Inc. v. City of Southgate*, 638 F.Supp. 1060 (E.D.Mich.1986), is asking the Court to do more than enjoin either the "exception" requirement of the Interim Ordinances or the CDP requirement of Chapter 18.105, neither of which affects CR Rialto since it is not in the appropriate zone to apply for either. It states that it is asserting that the combination of section 18.105.050 (limiting adult businesses to C–3 and C–M zones) and section 18.105.060 (prohibiting adult businesses from being located within 1000 feet of residential zoning) effectively prohibit adult businesses anywhere in the City. But the Court does not understand CR Rialto's argument to be that either of these sections separately or together are facially invalid. Instead, CR Rialto's argument with respect to these provisions requires a factually-based inquiry that necessitates the Court's looking considerably beyond the language of the ordinances themselves.[4] In its July 19, 1996 order to show cause re issuance of preliminary injunction, the Court limited the current matter to facial challenges and specifically stated it would not consider evidence of whether the City "provides a reasonable range of alternative sites or areas under the adult business regula-

tions."[5] Plaintiff has failed to establish standing to seek a preliminary injunction with respect to the Riverside Avenue premises.

## 2. Whether the 1996 Interim Ordinances Are Facially Void

CR Rialto contends that the 1996 Interim Ordinances are void because they violate California Government Code section 65858 for two reasons: the Interim Ordinances allow new uses on land zoned R–C and F–C in violation of section 65858(a) because these zones previously did not permit adult businesses and section 65858(e) prohibits the enactment of a moratorium through the mechanism of an urgency zoning ordinance after the expiration of a previous urgency moratorium affecting the same property.

### (1) Section 65858(a)

Section 65858(a) provides in part:

Without following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body, to protect the public safety, health and welfare, may adopt as an urgency measure an interim ordinance *prohibiting any uses* which may be in conflict with a contemplated general plan, specific plan, or zoning proposal which the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time (italics added).

CR Rialto argues that the 1996 Interim Ordinances are void under subsection (a) because they did not prohibit uses but rather added to existing uses by allowing adult busi-

---

**3.** The City has contended that this is a factual dispute that is inappropriate for the Court to resolve on this motion since it involves an "as applied" analysis.

**4.** Indeed, CR Rialto seems to acknowledge its contradictory position when it claims that "in connection with the current hearing, [it] seeks only a preliminary injunction with respect to its claim that the City's adult zoning and permit requirements are facially unconstitutional as applied to plaintiff's current location" (italics deleted). Reply at p. 14 n. 6. CR Rialto cannot bootstrap an "as applied" analysis by claiming it is doing so through a facial challenge.

**5.** That part of the court's order states in full: "The hearing on the preliminary and permanent injunction shall be limited to a facial challenge to the constitutionality of the City's adult business regulations. The hearing will not address any issue relating to an 'as-applied constitutional challenge to the City's adult business regulations, including, but not limited to receiving evidence as to whether the City provides a reasonable range of alternative sites or areas under the adult business regulations."

nesses subject to an exception permit in zones R–C and F–C where such adult uses previously had been prohibited. Citing *Silvera v. City of South Lake Tahoe*, 3 Cal. App.3d 554, 83 Cal.Rptr. 698 (1970), CR Rialto argues that California courts have struck down interim ordinances enacted pursuant to section 65858(a) when they purport to "authorize" uses previously forbidden rather than prohibiting uses with a view towards enacting a comprehensive zoning plan.

The City in its opposition contends that CR Rialto has mischaracterized the 1996 Interim Ordinances because they do not permit new uses since adult uses already were permitted under the City's prior adult business regulations. The City further contends that in *Metro Realty v. County of El Dorado*, 222 Cal.App.2d 508, 35 Cal.Rptr. 480 (1963), an appellate court upheld a similar urgency measure in which interim ordinances were used to zone undeveloped property that had not been zoned previously, thereby "adding zoning on vacant lands."

The City's argument that allowing adult businesses in zones R–C and F–C does not constitute a new use is unpersuasive. While it is true that adult businesses had been allowed in the City prior to the enactment of the 1996 Interim Ordinances, adult businesses had been restricted to C–3 and C–M zones. Allowing adult businesses in R–C and F–C zones did constitute adding a new use for these areas because the zoning had not previously allowed adult uses in these areas. The issue, therefore, is whether section 65858(a) permits passage of an interim statute which authorizes new uses in other planning zones of the City.

The cases cited by the parties are not exactly on point; it does not appear that California courts have considered the specific issue, although several decisions have dealt with the issue peripherally. Most persuasive is *Silvera v. City of South Lake Tahoe*, 3 Cal.App.3d 554, 83 Cal.Rptr. 698 (1970). In *Silvera*, the city council enacted two interim ordinances allowing construction of buildings to a height in excess to that which previously had been allowed by the city's zoning ordinance. In holding that the interim ordinances violated the emergency provisions of

section 65858, the court emphasized that allowing additional uses was contrary to the underlying purpose of the statute: "These ordinances do not prohibit; they authorize. They permit a use formerly prohibited—construction of a high-rise permanent building. It is thus obvious that the intent of the city counsel (sic) was not to adopt any stopgap temporary measure to prevent a use which might interfere with a comprehensive zoning plan." 3 Cal.App.3d at 556, 83 Cal.Rptr. at 699.

Contrary to the City's characterization of the *Metro Realty* decision, the Court in that case—while not directly confronting the instant issue—consistently identified the interim ordinance before it as imposing "temporary restrictions" on the plaintiff's use of his land, not an authorization of new uses. Like the court in *Silvera*, the *Metro Realty* decision also emphasized that the "temporary restrictions" were consistent with the purpose of the interim ordinance statute: to allow time for the county's development of a county-wide zoning plan.

In light of these decisions, the Court concludes that the City violated section 65858(a) when it passed the 1996 Interim Ordinances which authorize new uses—adult businesses—subject to an exception permit in zones where they had not been allowed previously.

#### (2) *Section 65858(e)*

Section 65858(e) provides as follows:

When an interim [zoning] ordinance has been adopted, every subsequent [zoning] ordinance adopted pursuant to this section, covering the whole or a part of the same property, shall automatically terminate and be of no further force or effect upon the termination of the first interim ordinance or any extension of the ordinance as provided in this section.

■ According to CR Rialto, the plain language of this statute dictates that the City's enactment of the Interim Ordinances in 1996 following the earlier enactment of the 1985 interim ordinances and their termination in 1985 upon City's enactment of Ordinance 940 is void because the 1996 Interim Ordinances

affect the same property. Arguing that California courts have found section 65858(e) to be a "plainly worded statute," CR Rialto claims that it makes no difference whether there was a gap of one month or a century since the City last enacted a moratorium affecting the same property because every subsequent moratorium ordinance affecting the same property is prohibited by the statute.

In opposition, the City points out that an eleven-year period separates the adoption of the urgency ordinances in 1985 and the Interim Ordinances in 1996. It argues that no case has ever held and section 65858(e) does not contemplate that a city is forever precluded from adopting another similar moratorium under that Government Code section as to the same property. To do so, according to the City, would result in an absurd construction of the statute and would hamper a city's ability to address significant changes in the law, such as those changes which occur concerning First Amendment rights.

While the City makes a persuasive argument, the principal case cited by CR Rialto, *Martin v. Superior Court (Sierra Madre)*, 234 Cal.App.3d 1765, 286 Cal.Rptr. 513 (1991), indicates that California courts strictly construe the language of section 65858(e). In *Martin,* the City of Sierra Madre ("Sierra Madre") adopted two interim ordinances, Nos. 1040 and 1053, which were subsequently extended pursuant to section 65858. Several months after the two interim ordinances had expired, Sierra Madre adopted a third interim ordinance, No. 1069, which imposed a moratorium on part of the same property affected by ordinance Nos. 1040 and 1053. The plaintiffs argued that ordinance No. 1069 had been enacted in violation of section 65858(e) and was therefore void because it purported to take effect beyond the termination of the first ordinance affecting their property.

Sierra Madre argued that section 65858(e) was inapplicable because the term used in the statute, "subsequent ordinance" only applies to a single moratorium which has been extended beyond the time limits and extensions allowed, and not to successive and different moratoria which are separated by a hiatus during which different zoning regulations are in effect. In rejecting this argument and concluding that ordinance No. 1069 was invalid, the court of appeal emphasized that nothing in the words of the statute or its legislative history suggested such a meaning: "Section 65858, subdivisions (a) and (e), allow the City Council to utilize the moratorium ordinance only once for an aggregate period of two years. It would have been a simple matter for the Legislature to permit a new two-year limit upon each rezoning of the affected property or upon termination of a prior ordinance. However, it did not." 234 Cal.App.3d at 1771, 286 Cal.Rptr. at 516.

Similarly, in *Bank of the Orient v. Tiburon,* 220 Cal.App.3d 992, 269 Cal.Rptr. 690 (1990), although dealing with a different issue—the effect of a voter initiative imposing a temporary moratorium where the city council already had enacted an interim urgency ordinance affecting part of the same property—the court concluded after reviewing the legislative history of section 65858 that the legislature had manifested an intent to "limit all moratorium ordinances" and "to occupy the entire field of interim zoning moratoria" through the statute. Strictly interpreting the duration and extension provisions of section 65858, the court stated that any subsequent moratorium ordinance, including the voter initiative in question, covering even some of the same property addressed by the earlier interim urgency ordinance "must terminate as the section provides: upon completion of the second extension." 220 Cal. App.3d at 1007, 269 Cal.Rptr. at 699. The court concluded that the voter initiative was invalid because by purporting to impose a moratorium longer than the original interim urgency ordinance could do under the statute, the voter initiative violated the express time limits for emergency ordinances set by section 65858.

While none of the parties have cited any authority exactly on all fours with the case at hand, the decisions in *Martin* and *Bank of the Orient* indicate that California courts strictly construe the limitation provisions of section 65858. Therefore, it would make no difference that the hiatus between the City's adopting the 1985 urgency ordinances and its

enactment of the 1996 Interim Ordinances was a period of eleven years. Having once utilized the provisions of section 65858 to enact a moratorium, the City had exhausted its options to enact a subsequent moratorium concerning "the whole or a part of the same property." The 1996 Interim Ordinances are therefore invalid and of "no further force or effect." [6]

The 1996 Interim Ordinances are therefore facially void and were enacted *ultra vires* by the City because their enactments do not comport with the provisions of subsections (a) and (e) of California Government Code section 65858.[7]

### C. Whether the CDP Substantive and Procedural Requirements of Section 18.105.050 Are Facially Valid

■ Both parties concede that if the Interim Ordinances are found invalid, the location of adult businesses in the City is governed by Chapter 18.105. Section 18.105.050 requires all adult businesses allowable in a particular zone to obtain a CDP from the City: "Adult oriented businesses shall only be permitted in C–3 (general commercial), and C–M (commercial-manufacturing) zones and shall be subject to the approval of a conditional development permit by the planning commission and the city council in accordance with Chapter 18.66." CR Rialto contends that the

CDP requirements of Chapter 18.66 of the Code ("Chapter 18.66") are facially invalid because they give the City excessive substantive and procedural discretion in deciding to issue a CDP, thus constituting an unconstitutional prior restraint on its First Amendment rights. In its opposition, the City does not address CR Rialto's arguments, apparently conceding that the CDP criteria for discretionary denial or granting of a CDP are unconstitutional.

The Court agrees with CR Rialto's position. No provision of Chapter 18.66 or any other provision in the Rialto Municipal Code make issuance of a CDP mandatory if all of the requirements for one are met. If the City's Planning Commission denies a CDP application, Section 18.68.060 of Chapter 18.68 of the Code ("Chapter 18.68") similarly gives the City Council unfettered discretion to "affirm, reverse or modify, in whole or in part, the order, requirement, decision, determination, interpretation or ruling appealed from, or make and substitute such other or additional decision or determination as it may find warranted under the provisions of the title." Likewise, Section 18.66.020 of Chapter 18.66 contains impermissibly vague and overbroad criteria that must be satisfied before a CDP is issued and confers excessive discretion upon City officials in determining whether these criteria have been met.[8] Sec-

---

6. This ruling is limited to the interpretation and application of section 65858(a)and (e). It does not involve an analysis and discussion of the legislative authority of a City under certain circumstances to enact immediately pursuant to the exercise of its inherent power an ordinance prohibiting certain activities in a city or portion thereof to protect the public health, safety, and welfare.

7. Because the court has found the 1996 Interim Ordinances to be facially void, it has not considered CR Rialto's other arguments that 1) the 1996 Interim Ordinances do not give an adult business a reasonable opportunity to open and operate a business because there is not a guarantee that the City will permanently enact an ordinance that would make the same areas permissible for adult uses; 2) that the "exception" procedure of the Interim Ordinances is facially invalid because it vests the City's Director of Developmental Services with excessive procedural and substantive discretion in conditionally granting an exception; or 3) that the 1996 Interim Ordinances are inapplicable to CR Rialto be-

cause it allegedly already was operating a lawful adult entertainment business since Chapter 18.105 is unconstitutional.

8. R.M.C. § 18.66.020 states that the following findings must be made before a CDP is granted:

A. The proposed use and development are deemed essential or desirable to provide a service or facility which will contribute to the convenience or general well-being of the neighborhood or community; and

B. The proposed use and development will not be detrimental or injurious to the health, safety or general welfare of persons residing or working in the vicinity; and

C. The site for the proposed development is adequate in size, shape, topography, accessibility and other physical characteristics to accommodate the proposed use and development in a manner compatible with existing land uses; and

D. The development site has adequate access to those utilities and other services required for the proposed use; and

tion 18.66.010 of Chapter 18.66 grants excessive discretion to City officials to impose whatever conditions upon the CDP that they deem "necessary and desirable to protect public health, safety and welfare."

▪ The Supreme Court has long held that in the "area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988) (statute giving mayor unbridled discretion over whether to permit newsracks was unconstitutional).

▪ Although nude dancing, such as at issue in this case, is on the "outer perimeters of the First Amendment," *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991), courts have not hesitated to invalidate ordinances which give city officials excessive discretion in cases involving the issuance of a conditional permit or license to operate an adult business. For example, in *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1268, 1274–75 (C.D.Cal.1996), a provision in the City of Pasadena's conditional use permit zoning ordinance—almost identical to that at issue in Section 18.66.020 of Chapter 18.68—allowed the city to deny the permit if the proposed use would be "detrimental to the public health, safety, or welfare of persons residing or working adjacent to the neighborhood of such use." The Court found that this provision granted city officials "unbridled discretion to grant [or deny] permits" and thus raised the specter that the licensor would "censor speech for impermissibly content-based covert motivations and then later rationalize the decision with seemingly permissible content-neutral reasons." *Id.* at 1275. *See also Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F.Supp. 1341, 1366 (C.D.Cal.1995) (if an ordi-

nance allows a planning commission or city council to "place any condition on the project, without limitation, the ordinance would undoubtedly constitute an unconstitutional prior restraint"); *Dease v. City of Anaheim*, 826 F.Supp. 336 (C.D.Cal.1993) (language of conditional use permit ordinance which allowed the city to make decisions based upon such ambiguous criteria as the "general welfare" of the community gave the city unbridled discretion and thus constituted an unconstitutional prior restraint on speech or expression).

In addition to the excessive substantive discretion given to City officials, the CDP requirement also confers excessive procedural discretion upon them. Section 18.66.080 of Chapter 18.66 fails to specify any time limits for conducting a hearing once an application for a CDP has been made. Although it provides that "at least one public hearing" must be conducted, it does not limit the number of public hearings that may be conducted. If an application is denied, an applicant may appeal an adverse decision pursuant to section 18.68.050 of Chapter 18.68, but that section fails to set any time limits within which the appeal must be heard.

Numerous courts, including the Supreme Court, have invalidated ordinances which did not set time limits for decisions in situations involving sexually oriented businesses because "[a] scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990) (ordinance that failed to place time limit on inspection required for issuance of license to a sexually oriented business or to provide for prompt judicial review was unconstitutional); *Redner v. Dean*, 29 F.3d 1495, 1501–02 (11th Cir.1994) (ordinance that created possibility of "indefinite suppression of expressive activity" be-

---

E. The proposed use will be arranged, designed and maintained so as it will not be injurious to property or improvements in the vicinity or otherwise be inharmonious with, the General Plan of this city and its objectives, zoning ordinances or any applicable specific plan and its objectives; and

F. Any potential adverse effect upon the surrounding properties will be minimized to every extent practical and any remaining adverse effects shall be outweighed by the benefits conferred upon the community or neighborhood as a whole.

cause of the uncertainty of its time limits failed to impose "reasonable time limits on the decisionmaker"); *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1268, 1275 (C.D.Cal.1996) (conditional use permit ordinance regulating live entertainment failed when it did not provide specific, brief time limits for setting a hearing on an application for a permit).

In summary, the City's CDP legislation provides City officials with both excessive substantive discretion and excessive procedural discretion. As such, the CDP ordinance constitutes an unwarranted prior restraint on expressive activities protected by the First Amendment and is facially unconstitutional. Because the CDP legislation operates as an unconstitutional prior restraint to constitutionally protected speech, no adequate legal remedy exists consistent with the purposes of the First Amendment.

■■■ Section 18.105.080 of Chapter 18.105 contains a severability clause providing that "[i]f for any reason any portion of this chapter shall be declared invalid or unconstitutional, then all other provisions hereof shall remain valid and enforceable." The City urges that the court could sever the CDP requirement of Section 18.105.050 pursuant to the severability provision if it is found to be unconstitutional. Based upon the language of the severability clause, the Court finds that the CDP requirement may be severed from the remaining ordinance. Without the unconstitutional CDP requirement, the City still retains a zoning scheme regulating adult businesses.[9]

■■■ "The requirements for the issuance of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.'" *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1495 (9th Cir.1996). CR Rialto has established that it is entitled to such relief since enactment of the 1996 Interim Ordinances violated Government Code section 65858 and was thus *ultra vires.*

The Court therefore will enjoin enforcement of the 1996 Interim Ordinances.

■■■ CR Rialto also has demonstrated that the CDP requirement of Section 18.105.050 constitutes a prior restraint on expressive activities protected by the First Amendment. A constitutional violation constitutes an irreparable injury. *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528–29 (9th Cir.1993) (" '[a]ny loss of first Amendment freedoms, even briefly, can constitute irreparable injury' "), *cert. denied,* 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). No legal remedy is adequate to compensate for the loss of expressive activities allowed by the First Amendment. The Court will also enjoin enforcement of Section 18.105.050, which requires adult oriented businesses to obtain a CDP pursuant to the provisions of Chapter 18.66, severing the CDP requirement of Section 18.105.050 from the other provisions of Section 18.105.050.

## D. The Constitutionality of the City's Adult Zoning Scheme

Aside from making facial challenges to the 1996 Interim Ordinances, the "exception" provided in the 1996 Interim Ordinances, and the CDP requirement of Section 18.105.050, CR Rialto has not made facial challenges to other City ordinances, although CR Rialto appears to seek some broader permanent injunction against the City's zoning restrictions for adult businesses. As stated above in the Court's discussion of standing, any argument CR Rialto wishes to make concerning the availability of a "reasonable opportunity" for locating an adult business in the City is predicated upon its argument that Chapter 18.105's combination of limiting such businesses to areas zoned either C–3 and C–M and requiring that they be at least 1,000 feet from residential areas precludes such an opportunity. CR Rialto does not attack either requirement as being facially unconstitutional. Resolving the issue of whether these combined requirements allow a "reasonable opportunity" for locating an adult business in the City involves the determina-

---

9. Of course, the court's ruling on this issue does not preclude CR Rialto from further attacking the City's adult business zoning scheme; CR Rialto has plainly indicated that it intends to do so on an "applied" basis.

tion of numerous controverted facts beyond the scope of this permanent injunction hearing. Therefore, the Court has no basis at this time for deciding whether the City's overall zoning restrictions for adult businesses is constitutional or not.

### E. Preliminary Injunction

■ As discussed above, the Court has concluded that CR Rialto did not have standing to seek a preliminary injunction with respect to the Riverside Avenue premises. Beyond that fact, CR Rialto has not presented any facial challenge to the City's zoning ordinances that would redress any injury allegedly suffered by it at the Riverside Avenue premises. Enjoining enforcement of the 1996 Interim Ordinances and the CDP requirement of Section 18.105.050 and severing that requirement will not transform the location of the Riverside Avenue premises into an appropriate zone to operate an adult business. CR Rialto's argument that it may lawfully operate an adult business in a C–S zone within 1,000 feet of a residential area is based upon its claim that the City's overall adult business zoning scheme is unconstitutional. But as the Court already has emphasized, CR Rialto has not facially challenged either the prohibition or restriction of Chapter 18.105. Its challenge to them is "as applied"—which is beyond the limited scope of this hearing.

CR Rialto also contends that it may lawfully operate an adult business (or at least continue offering the "erotic performances" it claims to have offered for some time) on the ground that the City has allowed it to do so. This theory is based upon certain acts or failures to act by various City officials and employees which taken together allegedly constituted "approval" for CR Rialto's offering adult entertainment at the Riverside Avenue premises. This factually controverted issue is also beyond the scope of this hearing.

In summary, the Court's partial resolution of the limited facial challenges to the City's adult zoning scheme in favor of CR Rialto by enjoining the enforcement of the 1996 Interim Ordinances and the CDP requirement and severing the requirement does not establish that CR Rialto has the legal right to conduct an adult oriented business at the Riverside Avenue premises.

### II. Disposition

The Court states its intended decision to issue a permanent injunction A) enjoining the City from enforcing 1) the 1996 Interim Ordinances and 2) the CDP requirement of Section 18.105.050 against expressive activities protected by the First Amendment anywhere in the City, and B) severing from Section 18.105.050 the CDP requirement and severing Chapter 18.66 from any applicability to adult oriented businesses, as provided in Section 18.05.050.

The Court further denies CR Rialto's application for a preliminary injunction enjoining the enforcement of the 1996 Interim Ordinances and the CDP legislation as to its Riverside Avenue premises based on its facial challenge to the constitutionality of those ordinances and legislation.

Regarding the Court's intended decision to issue a permanent injunction, CR Rialto and the City are ordered to serve and file proposed findings of fact ("findings") and conclusions of law ("conclusions") and a proposed permanent injunction within 15 days from the date of this order. Further, each party may submit objections to the other party's proposed findings, conclusion, and injunction no later than 10 days after being served by the other party with such documents.